2016 UT App 84

## THE UTAH COURT OF APPEALS

ASSET ACCEPTANCE LLC,
Appellee,
*v.*
JAY R. STOCKS,
Appellant.

Opinion
No. 20140898-CA
Filed April 28, 2016

Seventh District Court, Moab Department
The Honorable Lyle R. Anderson
No. 149700037

Marshall Thompson, Attorney for Appellant

Spencer B. Lythgoe, Attorney for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE KATE A. TOOMEY concurred. SENIOR JUDGE RUSSELL W. BENCH dissented, with opinion.[1]

ROTH, Judge:

¶1 Jay R. Stocks appeals the district court's denial of his motion to set aside a default judgment under rule 60(b)(1) of the Utah Rules of Civil Procedure. Stocks's proposed defense below was that the four-year statute of limitations for actions on an "open account" barred any claim against him for the unpaid balance on his credit card account. *See* Utah Code Ann. § 78B-2-307(1)(c) (LexisNexis 2012). The district court ruled, however, that the six-year statute of limitations for a "liability founded upon an instrument in writing" applied and that the action was

---

1. Senior Judge Russell W. Bench sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

therefore timely. *See id.* § 78B-2-309(2). Because Stocks's only claimed defense was that the suit was time-barred by the statute of limitations, the court declined to set aside the judgment against him. Stocks argues on appeal that the four-year statute of limitations applies to credit cards because credit card accounts are open store accounts and not liabilities founded on instruments in writing. *See id.* §§ 78B-2-307, -309. We do not reach that question but affirm the district court on the alternative basis that Stocks failed to demonstrate either mistake or excusable neglect sufficient to warrant setting aside the judgment under rule 60(b). *See* Utah R. Civ. P. 60(b).

BACKGROUND

¶2 Although the date is not apparent from the record, Stocks at some point entered into an agreement with Citibank for a credit card. Stocks used the credit card to make various purchases but eventually failed to make payments and defaulted on the account, leaving an unpaid balance of approximately $13,000. Citibank assigned Stocks's debt to Asset Acceptance for collection purposes.

¶3 Asset Acceptance filed a collection action and served Stocks with the complaint on February 20, 2014. Stocks, acting pro se, filed an answer on March 7, 2014. In his answer Stocks asserted an affirmative defense that because there had been no activity on the account since 2007, Asset Acceptance's claim against him was barred by the four-year statute of limitations set out in Utah Code section 78B-2-307.

¶4 After receiving Stocks's answer, Asset Acceptance served Stocks with its first set of discovery requests, which included both a request for production of documents and requests for admission. Asset Acceptance's discovery request contained the following notice, entirely in bold print, on the first page immediately below the caption:

*** IMPORTANT NOTICE TO DEFENDANT ***

> This Discovery Set contains Requests for Admission in addition [to] Request[s] for Production. Under Rule 36 of the Utah Rules of Civil Procedure the Requests for Admission <u>shall be deemed admitted unless you respond</u> to the Requests within 28 days after service of the Requests or within such shorter or longer time as the court may allow. Be aware that Plaintiff may move to have the Court enter judgment against you if certain matters in this action are deemed admitted based on your failure to respond timely.

(Emphasis in original.) In addition to this notice on the first page, the third page also contained a notice entirely in bold print that immediately preceded the requests for admission: "The following requests for admission will be deemed admitted if not responded to within twenty-eight (28) days after service." Stocks did not respond.

¶5 On May 14, 2014, Asset Acceptance filed a motion for summary judgment. The motion contained the following notice:

> Defendant is on notice that failure to respond to this motion within ten (10) days of the date of mailing may result in the Court granting the motion and/or entering a judgment. Defendant['s] Answer filed in this matter is insufficient as a response to this motion.

Stocks again failed to respond. Asset Acceptance submitted the motion for summary judgment to the district court for decision on June 19, 2014. The court granted the motion on June 20, 2014, noting, "No opposition to the Motion has been filed and the time to do so has now passed." That same day, the district court

signed a judgment in favor of Asset Acceptance and sent notice of the judgment to Stocks.

¶6    Approximately one month later, Stocks filed a pro se motion to set aside the judgment pursuant to rule 60(b) of the Utah Rules of Civil Procedure and requested a hearing. *See* Utah R. Civ. P. 60(b). In his motion, Stocks stated, "I did not answer the summons and complaint in the lawsuit because: (1) I believed that the response given to the original complaint was sufficient and was waiting for my day in court. (2) I believed the defense of statute of limitation had been raised and no other actions nor further filings were needed on my behalf."[2] Stocks again asserted that the action was time-barred because under Utah Code section 78B-2-307 a four-year statute of limitations for open accounts applied to credit cards. In its memorandum in opposition to Stocks's motion, Asset Acceptance argued that Stocks had not only failed to establish a valid basis for relief under rule 60(b) but had "consciously chose[n] to disregard the warnings and not respond to Discovery or the Motion for Summary Judgment." Asset Acceptance argues that such actions demonstrated "a clear lack of diligence" and that Stocks's "willful disregard [does] not even qualify as neglect" under rule 60(b). *See id.* R. 60(b)(1). Asset Acceptance further argued that a six-year statute of limitations applied to its claim and not, as Stocks asserts, a four-year statute of limitations. *See* Utah Code Ann. §§ 78B-2-307, -309 (LexisNexis 2012).

¶7    At the August 26, 2014 hearing, Stocks, appearing pro se, explained,

---

2. Although Stocks states that he "did not answer the summons and complaint," he did in fact timely answer the complaint. In context, it appears that Stocks intended this statement to mean that he did not answer the discovery requests or motion for summary judgment because he "believed that the response given to the original complaint was sufficient."

> I didn't respond [because] . . . I thought that it was a time-barred case. And then pursuant to Rule 60, I made a mistake[;] . . . I didn't realize that I had to respond to each and every claim that they had made, and I thought the initial response that it said it was a time-barred statute was sufficient.

Stocks further explained that he was "surprised" when Asset Acceptance "got a summary judgment" against him. Stocks argued that Asset Acceptance's claim should fail because it was barred by the four-year statute of limitations. In response, Asset Acceptance argued that "there's [no] basis for setting aside the judgment" because "there was no response [from Stocks] to any of the subsequent pleadings to the summons complaint" and that "the judgment should . . . remain in place" because the six-year statute of limitations for instruments founded on writings applies to credit cards. The district court denied Stocks's motion. In doing so the court stated,

> I could set aside the judgment and . . . then consider a motion for summary judgment on the grounds that it's a six-year statute [of limitations] that applies, or I could determine that there's really no point in granting a motion to set aside because a six-year statute is what applies. And I do believe that a six-year statute is what applies in this situation, so I don't see what's the point of going a longer path of setting aside, then hearing another motion for summary judgment. So I'm denying your motion to set aside.

Stocks now appeals.

## ANALYSIS

¶8 "A trial court has discretion in determining whether a movant has shown [Rule 60(b) grounds], and this Court will

reverse the trial court's ruling only when there has been an abuse of discretion." *Lange v. Eby*, 2006 UT App 118, ¶ 6, 133 P.3d 451 (alteration in original) (citation and internal quotation marks omitted); *see also Jones v. Layton/Okland*, 2009 UT 39, ¶ 10, 214 P.3d 859 ("We review a district court's denial of a rule 60(b) motion for relief from judgment for an abuse of discretion.").

¶9    In denying Stocks's rule 60(b) motion, the district court stated that it had read all documents related to this matter and had found that section 78B-2-309 of the Utah Code "is the applicable statute of limitations in this case, as the account in question is based upon instruments in writing." The court did not further explain the basis for its decision. Stocks seeks to challenge the court's denial of his motion to set aside the judgment "based on the purely legal determination that a six-year statute of limitations—not a four-year statute of limitations—applies to credit cards under Utah law."

¶10    As both parties agree, the question of which limitations period applies to actions on credit card accounts is an issue of first impression in Utah. Stocks argues that the four-year period applicable to "open store account[s] for [the purchase of] any good, wares, or merchandise" and to "open account[s] for work, labor or services rendered, or materials furnished," *see* Utah Code Ann. § 78B-2-307 (LexisNexis 2012), is the correct one; Asset Acceptance contends that it should be the six-year period applicable to "any contract, obligation, or liability founded upon an instrument in writing," *see id.* § 78B-2-309. In other jurisdictions where a similar issue has been addressed, the results have been mixed and often involve statutory language that differs from our own in ways that may or may not be significant.[3] And the question presented here is an important one

---

3. For example, some states have determined that their statute of limitations for open accounts, as opposed to the statute of limitations for written contracts, should apply to credit cards.

(continued…)

that deserves attention, whether judicial or legislative, given the universality of credit cards in our society and the number of collection cases involving credit card debt that make their way into our courts. But precisely because the issue is important and may have widespread impact, we decline to attempt to resolve an issue of first impression in a case with the sort of procedural deficits this one contains. *Cf. United States v. Monroe*, 866 F.2d 1357, 1367 (11th Cir. 1989) (declining to address an issue of first impression until "a better factual setting in which to determine the . . . issue" arises). Most importantly, as Asset Acceptance points out, the record here is not suited to the task.[4] For example, though the particular terms and structure of a credit card agreement may certainly bear on the determination of its nature

---

(…continued)
*See, e.g.*, *Portfolio Acquisitions LLC v. Feltman*, 909 N.E.2d 876, 884 (Ill. App. Ct. 2009); *Smither v. Asset Acceptance LLC*, 919 N.E.2d 1153, 1160 (Ind. Ct. App. 2010); *Gemini Capital Group v. New*, No. 10-1096, 2011 WL 3925723, at *3 (Iowa Ct. App. Sept. 8, 2011); *Capital One Bank v. Creed*, 220 S.W.3d 874, 877–78 (Mo. Ct. App. 2007); *Colorado Nat'l Bank of Denver v. Story*, 862 P.2d 1120, 1122 (Mont. 1993). Other states have reached the opposite conclusion and apply the longer statute reserved for contracts in writing. *See, e.g.*, *Hill v. American Express*, 657 S.E.2d 547, 548 (Ga. Ct. App. 2008); *Unifund CCR LLC v. Lowe*, 367 P.3d 145, 148–49 (Idaho 2016).

4. In its briefing, Asset Acceptance states, "The trial court record regarding the writings upon which the credit agreement in this case was founded was not fully developed." And as a consequence, "[a]nother case with a fully-developed record regarding the writings supporting the credit card agreement may be better suited for this Court's determination of the issue. As such, the Court may be better served by not reaching a determination on the statute of limitations issue by way of this case."

as an open account or instrument in writing, there is no such agreement in the record or even a description of the particular agreement beyond the bare allegations of the complaint and the motion for summary judgment, which are limited to "[Stocks] entered into a contract with CITIBANK opening an account ending in []3517," which the parties seem to acknowledge is a credit card account of some kind. From the facts before us in the record, there is simply no evidence about how any agreement might have been reached or what any of its terms are, beyond the bare requirement to make periodic payments.

¶11    Further, the procedural posture here—a ruling on a rule 60(b) motion to set aside a default judgment—is not well suited to resolve the kind of legal question raised. For instance, the demonstration of a "meritorious defense" requires no more than "a clear and specific proffer of a defense that, if proven, would preclude total or partial recovery," requiring only "that a party state the basis for its claims or defenses in short and plain terms." *Sewell v. Xpress Lube*, 2013 UT 61, ¶ 33, 321 P.3d 1080 (citation and internal quotation marks omitted). And the standard of review for the denial of such a motion focuses heavily on the highly discretionary nature of such a decision. *See Katz v. Pierce*, 732 P.2d 92, 93 (Utah 1986) (per curiam) ("The district court judge is vested with considerable discretion under Rule 60(b) in granting or denying a motion to set aside a judgment."); *see also Jones*, 2009 UT 39, ¶ 27 ("A district court abuses its discretion only when its decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice . . . [or] resulted from bias, prejudice, or malice." (alteration and omission in original) (citation and internal quotation marks omitted)). This narrow focus on the facial validity of claims or defenses is well tailored to the rule's limited purpose: "[T]o prevent the necessity of judicial review of questions which, on the face of the pleadings, are frivolous." *Sewell*, 2013 UT 61, ¶ 33 (citation and internal quotation marks omitted). But the result can be that an important legal issue such as this one, does not receive the full analytical attention at the

district court level it should otherwise merit and the appellate court is left without the benefit of the district court's insight. As a consequence, although we agree with both Stocks and Asset Acceptance that "this is an issue of first impression in Utah," this may not be the right case to address the issue because, as Asset Acceptance points out, "a review of the law of other jurisdictions is of little assistance, as there is no clear majority opinion, and statutory schemes for limitations periods vary widely from state to state."

¶12    Under the circumstances, then, we think it appropriate to resolve the matter on a different basis than the court below. "Although the district court based its denial of the 60(b) motion on other grounds, we are free to affirm the dismissal on any grounds apparent from the record," *Johnson v. Johnson*, 2010 UT 28, ¶ 13, 234 P.3d 1100, and we "may affirm the decision rendered below . . . on a ground on which the district court did not rely," *First Equity Fed. Inc. v. Phillips Dev. LC*, 2002 UT 56, ¶ 11, 52 P.3d 1137. *See Orton v. Carter*, 970 P.2d 1254, 1260 (Utah 1998) (stating that "[i]t is well established that an appellate court may affirm" a district court's order if the order "is sustainable on any legal ground or theory apparent on the record" (citation and internal quotation marks omitted)). We think it appropriate to do so here and conclude that Stocks failed to demonstrate that the circumstances entitled him to relief under rule 60(b)(1).[5]

¶13    Rule 60(b) of the Utah Rules of Civil Procedure provides a mechanism for a party to obtain relief from a final order or judgment on the basis of, among other things, "mistake, inadvertence, surprise, or excusable neglect." *See* Utah R. Civ. P. 60(b). To be entitled to relief under the rule, a party must show that "(1) the motion is timely; (2) there is a basis for granting

---

5. We note that both parties have briefed the issue of whether Stocks is entitled to relief under rule 60(b) for either mistake or excusable neglect.

relief under one of the subsections of 60(b); and (3) the movant has alleged a meritorious defense." *Menzies v. Galetka*, 2006 UT 81, ¶ 64, 150 P.3d 480. "These considerations should be addressed in a serial manner." *Id.* "In other words, there is no need to consider whether there is a basis for setting aside a . . . judgment if the motion was not made in a timely manner, and no need to consider whether there is a meritorious defense if there are not grounds for relief." *Id.* And "it is unnecessary, and moreover inappropriate, to even consider the issue of [a] meritorious defense[] unless the court is satisfied that a sufficient excuse has been shown." *State ex rel. Dep't of Soc. Servs. v. Musselman*, 667 P.2d 1053, 1056 (Utah 1983) (plurality opinion). In this case, the district court appears to have turned to the issue of Stocks's claimed meritorious defense without first considering whether he had met the other conditions for relief.

¶14    To begin, there is no dispute that Stocks's rule 60(b) motion was timely. And although Stocks urges this court to reach the third consideration of whether he has a meritorious defense, Stocks's actions in the proceedings below demonstrate the wisdom of addressing the considerations to obtain relief under rule 60(b) "in a serial manner." *See Menzies*, 2006 UT 81, ¶ 64. Accordingly, we must next determine whether Stocks has "a basis for granting relief under one of the subsections of [rule] 60(b)." *See id.*[6]

---

6. Although Stocks acknowledges that the district court's statement is "not as explicit as it could have been," he maintains that the district court implicitly "found a basis for relief" in his claims of excusable neglect and mistake because the court stated that it "*could set aside the judgment* and . . . then consider a motion for summary judgment on the grounds that it's a six-year statute that applies, or [the court] could determine that there's really no point in granting a motion to set aside because a six-year statute is what applies." (Emphasis added.) The dissent
(continued…)

¶15    Stocks brought his motion to set aside the judgment under the theories of excusable neglect, mistake, or newly discovered evidence, which implicates subsections (1) and (2) of rule 60(b).[7] *See* Utah R. Civ. P. 60(b)(1), (2). Stocks states in his

---

(…continued)

reaches the same conclusion, i.e., that the district court implicitly ruled in favor of Stocks's claim of excusable neglect before it proceeded to consider whether Stocks had a meritorious defense. *Infra* ¶ 24.

We interpret the court's statement differently. Here, the court not only failed to "make any explicit finding regarding due diligence," *see Shamrock Plumbing LLC v. Silver Baron Partners LC*, 2012 UT App 70, ¶ 4, 277 P.3d 649, but it did not even mention the issue in its ruling. Given that omission, the court's bare statement that it "could set aside the judgment" does not seem to support a reasonable inference that the court had fully considered the circumstances and determined that Stocks had established a reasonable excuse for his neglect of the proceedings. Rather, it is reasonable to conclude that the court simply skipped that step and proceeded directly to the question of whether there was a meritorious defense, describing only hypothetically what would happen *if* the court granted relief and without meaning to imply that it had determined that Stocks had shown a basis for it.

7. Rule 60(b)(2) allows for post-judgment relief based upon "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial." Utah R. Civ. P. 60(b)(2). Although Stocks cited rule 60(b)(2) in his motion to set aside the judgment and stated in his affidavit in support of that motion that he had "newly discovered evidence that will indicate that this is a time barred claim and would allow for the judgment to be set aside," he did not present any new evidence either at the hearing or in his reply to Asset Acceptance's opposition to his motion. Accordingly, we need not consider

(continued…)

reply brief that "[i]n addition to the listed grounds for relief, rule 60(b) includes a catchall provision for 'any other reason justifying relief from the operation of the judgment.'" (Quoting *id.* R. 60(b)(6).) Stocks continues, "Trial courts are granted broad discretion to make factual determinations about the attendant circumstances of a 60(b) motion." But Stocks merely recites this portion of the rule in his reply brief without providing any analysis. *See Brown v. Glover*, 2000 UT 89, ¶ 23, 16 P.3d 540 ("Generally, issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court."); Utah R. App. P. 24(a)(9) ("The argument shall contain the contentions and reasons of the appellant with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on."). And, in any event, because his claim most closely fits under subsection (1) of the rule for "mistake" or "excusable neglect," it cannot be brought under subsection (6) which is reserved for "any other reason justifying relief." *See Bliss v. Sky High Inc.*, 2002 UT App 255U, para. 7 (concluding that because appellant argued for relief under rule 60(b)(1) "he cannot [also] ask for relief under 60(b)(6)"). Subsection (6) of the rule does not apply, "[b]ecause [it] is meant to operate as a residuary clause, [and] may not be relied upon if the asserted grounds for relief fall within any other subsections of rule 60(b)." *Menzies*, 2006 UT 81, ¶ 71. Therefore, because Stocks's stated reasons for the relief he sought in the district court fall within the scope of rule 60(b)(1), he may not avail himself of subsection (6).

¶16    Although Stocks explained to the district court that he "made a mistake," it is this claimed "mistake" that seems to be his "excuse" for neglecting the request for discovery, the motion for summary judgment, and the notice to submit for decision.

---

(…continued)
Stocks's claim of newly discovered evidence, precisely because he did not present any.

But Stocks's actions do not qualify for relief as excusable neglect. The Utah Supreme Court has defined excusable neglect as "the exercise of due diligence by a reasonably prudent person under similar circumstances." *Mini Spas Inc. v. Industrial Comm'n of Utah*, 733 P.2d 130, 132 (Utah 1987) (per curiam) (citation and internal quotation marks omitted); *see also Sewell v. Xpress Lube*, 2013 UT 61, ¶ 29, 321 P.3d 1080 ("Due diligence is established where the failure to act was the result of . . . the neglect one would expect from a reasonably prudent person under similar circumstances." (omission in original) (citation and internal quotation marks omitted)). "[W]hile a party need not be perfectly diligent in order to obtain relief, *some* diligence is necessary" in order for the neglect to be considered excusable. *See Jones v. Layton/Okland*, 2009 UT 39, ¶ 23, 214 P.3d 859. In determining whether a party has exercised due diligence, the district court must consider whether the actions of the party seeking relief were "sufficiently diligent and responsible, in light of the attendant circumstances, to justify excusing it from the full consequences of its neglect." *Id.* ¶ 22. Therefore,

> [t]o grant relief on the ground of excusable neglect where a party has exercised no diligence at all, but simply because other equitable considerations might favor it, subverts the purpose of the excusable neglect inquiry. Rule 60(b)'s use of 'excusable' as a modifier of 'neglect' makes clear that *mere neglect alone* is an insufficient justification for relief.

*Id.* ¶ 23 (emphasis added).

¶17 Stocks's inaction cannot qualify as excusable neglect. In response to Asset Acceptance's complaint, Stocks filed an answer asserting the affirmative defense that Asset Acceptance's claim was barred by the four-year statute of limitations under section 78B-2-307 of the Utah Code. Asset Acceptance then served Stocks with its first set of discovery requests, which included both a request for production of documents and requests for admission. With respect to the requests for

admission, Asset Acceptance explicitly warned Stocks—in a large-type, bolded "IMPORTANT NOTICE TO DEFENDANT"—that "[u]nder Rule 36 of the Utah Rules of Civil Procedure the Requests for Admission shall be deemed admitted unless you respond to the Requests within 28 days after service," and repeated that warning as an introduction to the admission requests themselves. (Emphasis in original.) The discovery requests further cautioned Stocks in bold print that if he did not respond, Asset Acceptance could "move to have the Court enter judgment against [him] if certain matters in [the] action [were] deemed admitted based on [his] failure to respond timely." Yet Stocks made no effort to respond. Asset Acceptance then filed a motion for summary judgment based on Stocks's deemed admissions, just as it had warned him it could. Stocks again failed to respond, despite the admonition contained in the motion for summary judgment itself, stating that he was "on notice that failure to respond to this motion within ten (10) days of the date of mailing may result in the Court granting the motion and/or entering a judgment" and advising him that his "[a]nswer filed in this matter is insufficient as a response to this motion." Stocks again failed to respond. Asset Acceptance then filed a request to submit the matter for decision, and, again because Stocks failed to respond, the district court granted summary judgment in favor of Asset Acceptance. In doing so, the district court stated, "No opposition to the Motion [for summary judgment] has been filed and the time to do so has now passed." Although Stocks did file an answer to the original complaint, he did nothing else until after judgment was awarded to Asset Acceptance.

¶18   Stocks does not assert that he did not receive the requests for discovery, the motion for summary judgment, or the notice to submit for decision; rather, he simply says, "I didn't realize that I had to respond to each and every claim that they had made, and I thought the initial response that . . . said it was a time-barred statute was sufficient." Therefore, it seems there are only two plausible scenarios explaining Stocks's failure to

respond. Either Stocks chose not to read the documents and thus did not see the large bold-print notices informing him that he must respond or he read the documents but consciously chose to disregard the warnings and not respond. Neither of these scenarios qualifies as excusable neglect under rule 60(b).

¶19    If Stocks failed to read the documents, then he did not exercise the appropriate level of diligence required to excuse his neglect, because his complete lack of action does not meet the standard required, i.e., "the exercise of due diligence by a reasonably prudent person under similar circumstances." *Mini Spas Inc.*, 733 P.2d at 132 (citation and internal quotation marks omitted); s*ee also Jones*, 2009 UT 39, ¶ 23 ("To grant relief on the ground of excusable neglect where a party has exercised *no diligence at all . . .* subverts the purpose of the excusable neglect inquiry." (emphasis added)). "[D]iligence on the part of the party claiming excusable neglect is an essential element of [the] inquiry, and relief may not be granted based on other equitable considerations where a party has exercised no diligence at all." *Bodell Constr. Co. v. Robbins*, 2014 UT App 203, ¶ 10, 334 P.3d 1004 (citation and internal quotation marks omitted). And while we acknowledge that "a party need not be perfectly diligent in order to obtain relief" under rule 60(b), "some diligence is necessary." *Jones*, 2009 UT 39, ¶ 23. Under this scenario, failing to read the documents after receiving them does not qualify as excusable neglect that relieves Stocks from judgment.

¶20    The other possibility, which seems a reasonable inference from his statement to the district court, is that Stocks read the documents and chose not to respond because he "believed that the response given to the original complaint was sufficient" and therefore "no other actions nor further filings were needed." But to take this course, Stocks would have had to disregard the specific perils the documents themselves warned of, including the possibility that Asset Acceptance might seek judgment against him if he failed to respond to the requests for admission and the warning that judgment could result if he failed to respond to Asset Acceptance's subsequent motion seeking such

a judgment. His explanation is that he continued to hold to his belief that no response was required because he had stated a limitations defense in his answer, despite a specific admonition in the summary judgment motion itself that his answer was an insufficient response to the motion. Stocks characterizes this belief as a "mistake," and it is this mistake that Stocks seems to intertwine with his claim of excusable neglect. But such a mistake cannot be deemed an innocent error or neglect worthy of judicial relief where it involves hewing to a course of action in disregard of repeated warnings that serious harm may result. Rather, this is a path that no reasonably prudent person would follow in the face of such risk. *See Cadlerock Joint Venture II LP v. Envelope Packaging of Utah Inc.*, 2011 UT App 98, ¶ 9, 251 P.3d 837 (concluding that the district court did not abuse its discretion in finding that a party's neglect was not excusable even though the party "claim[ed] . . . it was unfamiliar with Utah Rules of Civil Procedure" (omission in original) (internal quotation marks omitted)); *Serrato v. Utah Transit Auth.*, 2000 UT App 299, ¶ 8 n.5, 13 P.3d 616 (noting that "[a] reasonably prudent person would not misread such a straightforward important legal document" as the one at issue in this case); *Meadow Fresh Farms Inc. v. Utah State Univ. Dep't of Agric. & Applied Sci.*, 813 P.2d 1216, 1218–20 (Utah Ct. App. 1991) (concluding plaintiff's "lack of communication with counsel," failure to appear at hearing, and confusion regarding the proceedings did not meet the excusable neglect standard, because a reasonably prudent person under similar circumstances would have followed the court's order to appear). Moreover, "a party who simply misunderstands or fails to predict the legal consequences of his deliberate acts cannot later, once the lesson is learned, turn back the clock to undo those mistakes." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999).

¶21 Thus, based on the undisputed facts before the district court, Stocks's complete lack of action in response to Asset Acceptance's discovery requests, motion for summary judgment, and notice to submit for decision despite repeated warnings of

potential adverse consequences of grave significance cannot qualify as excusable neglect or mistake under rule 60(b) of the Utah Rules of Civil Procedure. We therefore conclude as a matter of law that Stocks is not entitled to relief from the default judgment. *See Shamrock Plumbing LLC v. Silver Baron Partners LC*, 2012 UT App 70, ¶¶ 6–7, 277 P.3d 649 (reversing the trial court's grant of a rule 60(b) motion to set aside the judgment on grounds of excusable neglect on the basis that "[u]nder the circumstances, [defendants] appear to have exercised no diligence at all; thus, the relief afforded by the trial court was not justified" (internal quotation marks omitted)).

CONCLUSION

¶22   The district court based its denial of Stocks's rule 60(b) motion on whether the statute of limitations barred Asset Acceptance's claim, but "[i]t is well established that an appellate court may affirm" a district court's order if the order "is sustainable on any legal ground or theory apparent on the record." *Orton v. Carter*, 970 P.2d 1254, 1260 (Utah 1998) (citation and internal quotation marks omitted); *see also Johnson v. Johnson*, 2010 UT 28, ¶ 13, 234 P.3d 1100 ("[W]e are free to affirm the dismissal on any grounds apparent from the record."). Based on the undisputed facts in the record of the proceedings in the district court, it is clear that Stocks failed to act as a reasonably prudent person would in similar circumstances. Accordingly, we affirm the district court's denial of his rule 60(b) motion on that basis.

_____

BENCH, Senior Judge (dissenting):

¶23   I disagree with the majority's decision to affirm on the alternative ground that Stocks failed to show excusable neglect.

I believe we should address the statute of limitations question on the merits.

¶24    In ruling that Stocks had no meritorious defense, the district court implicitly accepted his excusable neglect argument. The court suggested that it might have set aside the judgment if it thought that Stocks might be able to successfully defend against another motion for summary judgment by convincing the court that the four-year statute of limitations should apply to Asset Acceptance's claims. However, the court ultimately determined that there would be "no point in granting a motion to set aside because a six-year statute is what applies."

¶25    "A district court has broad discretion to rule on a motion to set aside a default judgment under rule 60(b) of the Utah Rules of Civil Procedure," *Menzies v. Galetka*, 2006 UT 81, ¶ 54, 150 P.3d 480, and I am not convinced, particularly in light of the fact that Stocks was acting pro se, that it was an abuse of the district court's discretion to determine that Stocks had demonstrated excusable neglect. Stocks explained to the district court that he believed his answer to Asset Acceptance's complaint, in which he raised the statute of limitations defense, made it unnecessary for him to further respond to Asset Acceptance's motion for summary judgment. Although it might be appropriate to remand the case for the district court to explicitly rule on the excusable neglect issue, I do not believe we are in any position to make such a ruling as a matter of law.

¶26    I am also not convinced that a more fully developed record is needed to address the question of which statute of limitations applies to credit card debt. Whether an open credit card account, which is presumably subject to terms dictated by a written agreement, but which has a shifting balance tracked in monthly statements,[8] falls under the four-year statute of

---

8. Asset Acceptance indicates that "written terms and conditions setting forth the essential terms" of a credit card agreement "are

(continued…)

limitations or under the six-year statute of limitations is a question of statutory interpretation. The four-year statute of limitations is applicable to actions "on an open store account for any goods, wares, or merchandise . . . [or] on an open account for work, labor or services rendered, or materials furnished." Utah Code Ann. § 78B-2-307(1) (LexisNexis 2012). The six-year statute of limitations is applicable to actions brought "upon any contract, obligation, or liability founded upon an instrument in writing." *Id.* § 78B-2-309(2). The question of which statute of limitations applies to credit card debt does not appear to be particularly fact dependent.[9] I fail to see how a more detailed record would help us to resolve this question of statutory

---

(…continued)
universally provided to the cardholder . . . when the card is issued" and that "[p]eriodic written statements" are also "universally sent to the cardholder . . . and include the balance owing on the account, any fees and interest accrued, the interest rate, the current payment due, and the payment due date." Stocks likewise acknowledges that "standard credit agreements are generally kept in a writing of some form that explains the applicable interest rates and other important terms" and that although no written instrument had been produced in this case it could be presumed that he "entered into a standard credit card agreement . . . , which is usually and properly kept in writing."

9. The district court's summary decision on the statute of limitations issue supports this conclusion. Had the district court considered this issue to involve a fact-dependent inquiry, it would have considered the particular facts of the case in reaching its decision rather than simply following the rulings in other district court cases that applied the six-year statute of limitations. Indeed, the district court explained that it considered the statute of limitations issue to present "a purely legal question."

interpretation.[10] While it might be easier to decide the issue after it has received "full analytical attention at the district court level," and our analysis could certainly "benefit [from] the district court's insight," *see supra* ¶ 11, this issue of statutory interpretation is ultimately a legal question that we review "for correctness, affording no deference to the district court's legal conclusions," *State v. Gallegos*, 2007 UT 81, ¶ 8, 171 P.3d 426.

¶27    I believe the parties are entitled to a straightforward answer to the question they have presented on appeal. Because the main opinion fails to answer that question, I respectfully dissent.

———————

10. The majority suggests that a careful analysis of the specific credit card agreement at issue is necessary to determine which statute of limitations applies. *See supra* ¶ 10. This implies that the majority anticipates the four-year statute of limitations applying to some credit card debts and the six-year statute applying to others, depending on the specific terms of the credit card agreement at issue. I fear that such an approach would create unpredictability and confusion regarding the application of the statute of limitations to actions based on credit card agreements. I do not agree that it is necessary to examine the particular agreement at issue in order to determine which statute of limitations applies to credit card agreements generally. Rather, an examination of the nature of credit card debt and the form and structure of standard credit card agreements should be sufficient. *See supra* ¶ 26 & note 8.