*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2013 UT 61**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

LARRY SEWELL,
*Plaintiff and Appellee,*

*v.*

XPRESS LUBE,
*Defendant and Appellant.*

No. 20120445
Filed October 18, 2013

Fifth District, St. George
The Honorable James L. Shumate
No. 110503277

Attorneys:

Nicholas Isaac Chamberlain, St. George, for appellee

Paul M. Belnap, David E. Brown, Salt Lake City, for appellant

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE DURHAM, and JUSTICE LEE joined.

JUSTICE PARRISH, opinion of the Court:

## INTRODUCTION

¶1     Xpress Lube appeals from the district court's order
denying its motion to set aside a default judgment in favor of Larry
Sewell. Sewell fell into a service pit at Xpress Lube, which is a sole
proprietorship of Bruce Anderson. Sewell alleged injuries resulting
from the fall, and his attorney thereafter began negotiating with
Travelers Insurance (Travelers), Anderson's insurance carrier. When
negotiations proved unsuccessful, Sewell filed suit, naming Xpress
Lube as the only defendant.

¶2     A process server left copies of the summons and complaint
with an Xpress Lube employee. Anderson found the summons and
complaint several days later and immediately sent them to his
insurance agent. The agent attempted to fax the complaint to
Travelers, but apparently misdialed the fax number and Travelers
never received it.

¶3 Sewell moved for default judgment, which the district court granted. Xpress Lube moved to have the default set aside. The district court denied the motion and entered judgment in favor of Sewell for all damages alleged in his complaint. Xpress Lube appeals.

## BACKGROUND

¶4 On January 15, 2011, Sewell fell into a service pit at Xpress Lube. He was sixty-eight years old, on Medicare, and allegedly unemployed.[1] Xpress Lube is an oil and lube business, of which Anderson is the sole proprietor. On February 3, 2011, Sewell's counsel contacted and informed Anderson's insurer, Travelers, that Sewell had been injured and made a demand for damages. Sewell and Travelers exchanged several settlement offers but were unable to reach an agreement.

¶5 After approximately eight months of negotiations, Sewell filed suit. Despite the fact that Sewell's counsel had been negotiating with counsel for Travelers, Sewell's counsel did not inform counsel for Travelers that he was ending negotiations or filing a lawsuit. The suit named "Xpress Lube, a Utah business entity" as the only defendant. Anderson was not named as a party.

¶6 Sewell hired a process server to serve the summons and complaint. The process server arrived at Xpress Lube on October 11, 2011, spoke with Brian Deuel, an Xpress Lube employee, and asked to see the person "in charge." Deuel informed the process server that he was not a manager or a person in charge and that one was not currently available. After several minutes of waiting for a manager or person in charge to return, the process server left the summons and complaint with Deuel.

¶7 Deuel placed the summons and complaint on Anderson's office desk. Several days later, Anderson saw the summons and complaint and delivered them to his insurance agent. That same day, the insurance agent attempted to fax a copy of the summons and complaint to Travelers, but the fax was apparently sent to the wrong number. Travelers never received the fax and remained unaware that the complaint had been filed.

¶8 On November 21, 2011, just twenty-three days after copies of the summons and complaint had been left at Xpress Lube, Sewell

---

[1] Because there have been no factual findings in this case, the facts are recited only as they are alleged by the parties.

filed a motion for default judgment. He asserts that a copy of the motion was mailed to Xpress Lube. But Anderson claims that he did not receive a copy of the motion for default judgment until December 8, 2011, when he received it in the mail along with a copy of the actual default judgment.

¶9 The district court had entered the default judgment on December 6, 2011. Despite the fact that the district court did not hold any evidentiary hearing on damages, it entered judgment against Xpress Lube in the amount of $600,000, the full amount requested by Sewell.[2]

¶10 On December 8, 2011, immediately after receiving copies of the motion for default judgment and the default judgment itself, Anderson took both to his insurance agent and learned that the complaint had never been received by Travelers. That same day, Travelers retained counsel who contacted counsel for Sewell and requested that Sewell stipulate to set aside the default. Sewell's counsel refused.

¶11 On December 21, 2011, Xpress Lube filed a motion to set aside the default judgment and a proposed answer to Sewell's complaint. On April 17, 2012, the district court held a hearing and announced from the bench its decision to deny the motion.

¶12 The following day, Sewell's counsel submitted a proposed order reflecting the ruling. The district court entered the proposed order the very next day—April 19, 2012. Before Xpress Lube learned that the proposed order had been entered, it filed an objection. The district court thereafter vacated the order. That same day, Xpress Lube filed another motion to set aside default judgment, or in the alternative a motion to reconsider. On May 2, 2012, Sewell again opposed Xpress Lube's motion and submitted yet another proposed order. This new proposed order denied both of Xpress Lube's motions to set aside default judgment and included a provision indicating that Anderson was personally liable for the judgment against Xpress Lube. The district court signed this proposed order on May 4, 2012, and entered it on May 8, 2012.

¶13 Xpress Lube appeals. It argues that the district court erred in refusing to set aside the default judgment as void for lack of

---

[2] The $600,000 consisted of $45,000 for medical expenses, $420,000 in lost present and future earnings, and $135,000 for pain and suffering.

jurisdiction under rule 60(b)(4) of the Utah Rules of Civil Procedure. It alternatively argues that the district court erred in refusing to set aside the default judgment on grounds of mistake, inadvertence, or excusable neglect under rule 60(b)(1) of the Utah Rules of Civil Procedure. It finally argues that even if the district court did not err in refusing to set aside the default judgment, it erred in awarding Sewell $600,000 in nonliquidated damages without holding an evidentiary hearing.

¶14   We elected to retain this appeal and have jurisdiction under Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶15   Generally, "a [district] court has broad discretion in deciding whether to set aside a default judgment." *Lund v. Brown*, 2000 UT 75, ¶ 9, 11 P.3d 277. But that discretion is not unlimited and "should be exercised in furtherance of justice and should incline towards granting relief in a doubtful case to the end that the party may have a hearing." *Helgesen v. Inyangumia*, 636 P.2d 1079, 1081 (Utah 1981). Indeed, "it is quite uniformly regarded as an abuse of discretion to refuse to vacate a default judgment where there is reasonable justification or excuse for the defendant's failure to [respond], and timely application is made to set it aside." *Id.* (internal quotation marks omitted).

¶16   An appellate challenge to a district court's refusal to set aside a default judgment for lack of jurisdiction presents a question of law, for which no discretion is afforded to the district court. *See Jackson Constr. Co. v. Marrs*, 2004 UT 89, ¶ 8, 100 P.3d 1211. *See also Reed v. Reed*, 806 P.2d 1182, 1184 n.3 (Utah 1991) ("[W]hether a person is properly served is a question of law.").

¶17   The issue of whether the district court followed rule 55 of the Utah Rules of Civil Procedure, which requires an evidentiary hearing on issues of damages, presents a question of law. We accordingly give no deference to the district court on this issue. *See Cadlerock Joint Venture II, LP v. Envelope Packaging of Utah, Inc.*, 2011 UT App 98, ¶¶ 6, 10, 16, 251 P.3d 837.

## ANALYSIS

### I.  THE DEFAULT JUDGMENT IS VOID FOR LACK OF JURISDICTION

¶18   Utah Rule of Civil Procedure 60(b)(4) provides that "the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding . . .

[when] the judgment is void." "A judgment is void under rule 60(b)(4) if the court that rendered it lacked jurisdiction of the subject matter, or parties or the judgment was entered without the notice required by due process." *Judson v. Wheeler RV Las Vegas, L.L.C.*, 2012 UT 6, ¶ 18, 270 P.3d 456 (internal quotation marks omitted). This is true "even absent a separate meritorious defense. The court's lack of jurisdiction is alone sufficient to void its judgment." *Id.* ¶ 15 (footnote omitted). "A motion under rule 60(b)(4) . . . could succeed on the basis of a mere showing that the judgment was void because of some defect in the court's authority over the case or the parties." *Id.* ¶ 16. Therefore, "[i]f a judgment is entered by a court that lacks jurisdiction, justice is furthered by setting that judgment aside as void under rule 60(b)(4)." *Id.* ¶ 15.

¶19 Xpress Lube argues that the judgment is void. Specifically, it argues that the process server's decision to simply leave copies of the summons and complaint with Deuel, a mere employee of Xpress Lube, did not constitute proper service under rule 4 of the Utah Rules of Civil Procedure. Sewell disagrees. He argues that the "only thing that matters is that the employee in question was completely responsible for all of Appellant's operations and assets, thus satisfying [r]ule 4's requirements for service upon a 'person in charge.'"

¶20 Sewell's argument is misplaced because it relies on the wrong subsection of rule 4. Sewell relies on rule 4(d)(1)(E), which states that service on a corporation, partnership, or unincorporated association subject to suit under a common name shall be made "by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or other agent authorized by appointment or by law to receive service of process." But Xpress Lube is not a corporation, partnership, or unincorporated association. Rather, it is a sole proprietorship of Anderson. Thus, rule 4(d)(1)(E) does not apply.

¶21 The defendant named in Sewell's complaint is "Xpress Lube, a Utah business entity." Anderson is the sole proprietor of Xpress Lube. Because "[a] proprietorship has no formal legal existence . . .[t]he proper defendant in such a circumstance is the individual owner of the business." JAMES J. BROWN, JUDGMENT ENFORCEMENT § 11.03 (3d ed. 2009). *See also Bonneville Billing & Collection v. Johnston*, 1999 UT 92, ¶ 4, 987 P.2d 600 (finding service proper where an individual doing business as J.C. Johnson Company was served at his residence). Thus, to serve a sole proprietorship, the sole proprietor must be served under rule 4(d)(1)(A).

¶22   Courts in other jurisdictions have similarly held that the proper defendant in a suit against a proprietorship is the sole proprietor.  For example, in *Patterson v. V & M Auto Body*, the Ohio Supreme Court held that a lawsuit may not "be knowingly maintained against a defendant solely under the fictitious name in which the defendant does business."  589 N.E.2d 1306, 1308 (Ohio 1992).  In *Coldwell Banker Manning Realty, Inc. v. Cushman & Wakefield of Connecticut, Inc.*, a Connecticut court concluded that the lower court lacked jurisdiction because the plaintiff was a nonexistent entity lacking standing, which made it impossible for the entity to have "some real interest in the cause of action."  47 A.3d 394, 397–98 (Conn. App. Ct. 2012) (internal quotation marks omitted).  Since "the trade name of a legal entity does not have a separate legal existence, a plaintiff bringing an action solely in a trade name cannot confer jurisdiction on the court."  *Id.* at 398 (internal quotation marks omitted).  And in *Fried v. Wellesley Mazda*, the court observed that the "use of the designation 'doing business as' does not create a separate legal entity that may be made a party defendant."  2010 Mass. App. Div. 36, *1 (Mass. Dist. Ct. 2010) (citation omitted).  Thus, effective service required that service be made personally upon Anderson as sole proprietor of Xpress Lube.

¶23   While we acknowledge that Anderson became aware of the lawsuit when he found copies of the summons and complaint on his desk, that knowledge does not substitute for proper service.

> Service of summons in conformance with the mode prescribed by statute is deemed jurisdictional, for it is service of process, not actual knowledge of the commencement of the action, which confers jurisdiction.  Otherwise, a defendant could never object to the sufficiency of service of process, since he must have knowledge of the suit to make such objection.  The proper issuance and service of summons is the means of invoking the jurisdiction of the court and of acquiring jurisdiction over the defendant; these cannot be supplanted by mere notice by . . . other . . . means.

*Murdock v. Blake*, 484 P.2d 164, 167 (Utah 1971) (footnotes omitted).  In short, even though Anderson eventually became aware of the summons and complaint, service was nevertheless insufficient.

¶24   Sewell argues that he should be excused from the requirement of serving Anderson as the sole proprietor of Xpress

Lube because "[p]rior to the commencement of this case it was not possible for any person to ascertain who [Xpress Lube] was. No method, short of instituting legal action, could bear the fruit of specifically identifying who was behind the operations of [Xpress Lube]." But counsel for Sewell conceded at oral argument that his only effort to ascertain the nature of Xpress Lube or the identity of its owner was to search a list of businesses on a Utah state database. He did not inquire at Xpress Lube's business location or ask any of its employees. He did not search for a business license. And he did not ask Travelers, with whom he had been negotiating for eight months. Moreover, although the process server left copies of the summons and complaint with Deuel, he made no inquires of Deuel as to the nature of Xpress Lube or the identity of its owner. Under these facts, we are not persuaded by Sewell's assertion that it was impossible for him to ascertain the nature of Xpress Lube.

¶25   The district court lacked jurisdiction to enter the default judgment. To serve a sole proprietorship, the sole proprietor must be served. That did not happen in this case. As a result, the default judgment is void under rule 60(b)(4) of the Utah Rules of Civil Procedure.

## II. THE DISTRICT COURT ALSO ERRED IN FAILING TO VACATE THE DEFAULT JUDGMENT UNDER RULE 60(b)(1) DUE TO MISTAKE, INADVERTENCE, OR EXCUSABLE NEGLECT

¶26   Xpress Lube alternatively argues that the district court abused its discretion in refusing to grant relief from the default judgment because its "failure to answer Appellee's Complaint was the result of mistake, inadvertence, surprise or excusable neglect, and absent such mistake the default would not have occurred." Specifically, Xpress Lube points out that Anderson delivered the summons and complaint to his insurance agent as soon as he found them on his desk and that the failure to answer was the result of his insurance agent's error in sending them to the wrong fax number.

¶27   Under rule 60(b)(1), "the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." We have stated that "a movant is entitled to have a default judgment set aside under 60(b) if (1) the motion is timely; (2) there is a basis for granting relief under one of the subsections of 60(b); and (3) the movant has alleged a meritorious defense." *Menzies v. Galetka*, 2006 UT 81, ¶ 64, 150 P.3d

480.  We consider each of these requirements in turn.

¶28   A motion to set aside a default judgment under subsection (1) is timely if it is made "within a reasonable time and . . . not more than 3 months after the judgment . . . was entered."  UTAH R. CIV. P. 60(b).  There is no dispute that Anderson's motion was timely.  The default judgment was entered on December 6, 2011. Anderson moved to have it set aside on December 21, 2011, just fifteen days later.  We therefore move to the next prong of the test.

¶29   Rule 60(b)(1) provides for relief from a default judgment entered as a result of mistake, inadvertence, surprise, or excusable neglect.  To qualify for relief under rule 60(b)(1), a party must show he has used due diligence.  Due diligence is established where the "failure to act was the result of . . . the neglect one would expect from a reasonably prudent person under similar circumstances." *Judson v. Wheeler RV Las Vegas, L.L.C.*, 2012 UT 6, ¶ 27, 270 P.3d 456 (internal quotation marks omitted).  We conclude Xpress Lube also satisfies this prong of the test.

¶30   Xpress Lube asserts:

> From the time of the Incident, [it] attempted to take all reasonable steps to resolve [Sewell's] claims, including reporting the Incident to the Insurance Agent before any claim was made, relying on Travelers during the negotiations, delivering a copy of the Summons and Complaint to the Insurance Agent the same day Mr. Anderson found them on his desk, and delivering a copy of the Motion for Default Judgment and Default Judgment to the Insurance Agent the same day Mr. Anderson received those documents. . . . Had the Insurance Agent not inadvertently or mistakenly sent the Summons and Complaint to the wrong fax number, an Answer would have been timely filed [and] the default would not have occurred.

Moreover, as soon as Mr. Anderson learned that a motion for default judgment had been filed and default judgment had been entered, he immediately returned to his insurance agent who retained counsel, and counsel expeditiously sought to set aside the default.  Xpress Lube also points out that even though its insurer had been negotiating with counsel for Sewell, counsel for Sewell did not notify the insurer that it was terminating negotiations or filing suit.

¶31   Sewell has not argued that Xpress Lube's failure to file an

answer was the result of anything more than a simple mistake by its insurance agent. Instead, Sewell focuses on his interactions with Travelers prior the initiation of the lawsuit, arguing that Travelers' "pre-litigation negotiations were in bad faith and sporadic." But that is beside the point. The relevant inquiry is whether Xpress Lube's failure to answer the complaint was the result of mistake, inadvertence, or excusable neglect.

¶32 Sewell also makes much of his assertion that he mailed the motion for default to Xpress Lube on November 21, 2011, some two weeks before the default was entered. But Anderson has testified that he first received notice of the default proceedings when the order of default was mailed to him on December 8, 2011. And immediately upon receiving notice, he took action to have the default set aside.

¶33 Having found that there is a basis for granting relief under rule 60(b)(1), we now move to the third part of the test, which requires us to consider whether Anderson has alleged a meritorious defense. "The assertion of a meritorious defense under rule 60(b) requires only a clear and specific proffer of a defense that, if proven, would preclude total or partial recovery by the claimant or counterclaimant." *Judson*, 2012 UT 6, ¶ 23 (internal quotation marks omitted). This requires "that a party state the basis for its claims or defenses in short and plain terms." *Id.* (internal quotation marks omitted). "The purpose of the meritorious defense rule is to prevent the necessity of judicial review of questions which, on the face of the pleadings, are frivolous." *Lund v. Brown*, 2000 UT 75, ¶ 28, 11 P.3d 277 (internal quotation marks omitted). "Thus, where a party presents a clear and specific proffer of a defense that, if proven, would preclude total or partial recovery by the claimant or counterclaimant, it has adequately shown a nonfrivolous and meritorious defense for the purposes of its motion to set aside a default judgment." *Id.* ¶ 29.

¶34 Here, Xpress Lube has alleged several meritorious defenses. It has argued that Sewell was negligent in walking into the service pit, that Sewell's claimed medical damages are not attributable solely to the fall at Xpress Lube, and that Sewell's claims for lost present and future wages are unsupported by the evidence inasmuch as Sewell was sixty-eight years old and unemployed at the time of the incident. These defenses are sufficient, if proved, to "preclude total or partial recovery," *id.*, and thus qualify as a meritorious defense. *Judson*, 2012 UT 6, ¶ 23. Because Xpress Lube established that its default was the result of mistake, inadvertence,

or excusable neglect, the district court abused its discretion in refusing to set aside the default judgment under rule 60(b)(1). As we have previously emphasized, "discretion should be exercised in furtherance of justice and should incline towards granting relief . . . to the end that the party may have a hearing." *Helgesen v. Inyangumia*, 636 P.2d 1079, 1081 (Utah 1981).

## III. THE DISTRICT COURT ERRED WHEN IT FAILED TO HOLD AN EVIDENTIARY HEARING ON UNLIQUIDATED DAMAGES

¶35 Xpress Lube alternatively argues that the district court "abused its discretion by entering a default judgment in the amount of $600,000 without any hearing or notice of any hearing on damages." Sewell counters that an evidentiary hearing was not required because damages are "sufficiently defined." We agree with Xpress Lube.

¶36 Under rule 55(b)(2) of the Utah Rules of Civil Procedure, in a default proceeding, "the court may conduct such hearings or order such references as it deems necessary and proper" if "it is necessary to take an account or to determine the amount of damages." "As a general rule, a default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint." *Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 965 (Utah Ct. App. 1989) (internal quotation marks omitted). But "it is still incumbent upon the non-defaulting party to establish by competent evidence the amount of recoverable damages and costs he claims." *Id.* "[E]ven defaulting defendants should usually be afforded an evidentiary hearing whenever the amount owed is unliquidated under rule 55(b)(2)." *Cadlerock Joint Venture II, LP v. Envelope Packaging of Utah, Inc.*, 2011 UT App 98, ¶ 10, 251 P.3d 837.

¶37 Although the language of rule 55(b)(2) appears to be permissive by stating that the court *may* conduct a hearing on damages, a district court does not have discretion to avoid a hearing when the damages are unliquidated, regardless of the allegations in the complaint. Liquidated damages are those that can be precisely determined. In such cases, an evidentiary hearing is not always required. *See Novosad v. Cunningham*, 38 S.W.3d 767, 773 (Tex. App. 2001) ("A claim is liquidated if the amount of damages can be accurately calculated by the court from the factual, as opposed to the conclusory, allegations in the petition and an instrument in writing."). But where the damage claim is for other than a sum

certain, the district court has an "obligation under rule 55(b)(2) to conduct such hearings and take such evidence as it deems advisable for determining the damages." *Cadlerock Joint Venture II, LP*, 2011 UT App 98, ¶ 11 (internal quotation marks omitted).

¶38   Sewell argues that he "specifically laid out damages." He is mistaken. The district court entered default against Xpress Lube in the total amount of $600,000, consisting of $45,000 in medical bills, $420,000 in lost present and future wages, and $135,000 for pain and suffering. But the fact that these amounts were requested in the complaint does not render them certain or liquidated. Personal injury cases almost always involve elements of "damages [that] are incomplete or cannot be calculated with mathematical accuracy." *Canyon Country Store v. Bracey*, 781 P.2d 414, 422 (Utah 1989) (internal quotation marks omitted). This is particularly true where the damages sought include amounts for pain and suffering, and lost future wages.

¶39   In a case presenting a claim for damages similar to the one at issue here, the court of appeals noted:

> None of the allegations in [the appellee's] complaint indicate a "sum certain" from which the [district] court could have calculated the particular damages awarded—$6,000 for medical expenses, $3,120 for lost income, and $20,000 for pain and suffering. Thus, the complaint does not present sufficient credible evidence to support the [default] judgment [amount].

*Salazar v. Chavez*, 2012 UT App 177, ¶ 7 n.5, 282 P.3d 1033 (third alteration in original) (internal quotation marks omitted).

¶40   Here, Sewell did not request and the district court did not hold a hearing on damages. Instead, the district court simply entered judgment for the full $600,000 in unliquidated damages prayed for in Sewell's complaint. In failing to hold such a hearing, the district court abused its discretion.

## CONCLUSION

¶41   We hold that the district court erred when it declined to set aside the default judgment. We vacate the default judgment on three alternative and independent grounds. First, there was no proper service on Xpress Lube under rule 60(b)(4) because in order to serve a sole proprietorship, the sole proprietor must be served. Therefore, the district court lacked jurisdiction and the judgment is void. Even if the district court had jurisdiction, we would vacate the

default judgment under rule 60(b)(1) because the motion to set it aside was timely filed, it was the result of mistake, inadvertence, or excusable neglect, and Xpress Lube has alleged a meritorious defense. Finally, the district court erred when it entered default judgment for the full amount of damages alleged in the complaint without holding an evidentiary hearing. We therefore reverse and remand for further proceedings consistent with this opinion.

———————