2020 UT App 93

# THE UTAH COURT OF APPEALS

KELLEY ANNE SOMER,
Appellant,
*v.*
ERIC JOHN SOMER,
Appellee.

Opinion
No. 20190293-CA
Filed June 11, 2020

Third District Court, Salt Lake Department
The Honorable Richard D. McKelvie
No. 134900325

Carolyn Perkins, Attorney for Appellant

Brady T. Gibbs, Attorney for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES KATE APPLEBY and DIANA HAGEN concurred.

MORTENSEN, Judge:

¶1    Kelley Anne Somer failed to timely respond to a petition
to modify that had been personally served upon her. The district
court entered her default and granted the petition, terminating
the alimony obligation established in the divorce decree. Kelley
then moved to set aside the order on the ground of excusable
neglect. A commissioner recommended that the motion to set
aside be denied, and Kelley objected. The district court overruled
Kelley's objection and entered an order denying her motion.
Kelley appeals, claiming that the district court applied the wrong
standard in ruling on the objection and exceeded its discretion in
denying the motion to set aside. Although we agree that the
district court applied the incorrect legal standard as to Kelley's
objection, we conclude that Kelley invited the error. We further
conclude that the district court did not exceed its discretion in

refusing to set aside the order modifying the decree. We therefore affirm.[1]

BACKGROUND

¶2    Kelley and Eric married in the summer of 1990. In the beginning of 2013, Kelley filed for divorce, alleging irreconcilable differences. A little more than two years later, after significant litigation, the district court entered a divorce decree. In the decree, Eric was ordered to make alimony payments of $2,416 per month for twelve years. The divorce decree added various standard conditions, including that the alimony obligation would terminate upon "the death of either party, the remarriage of [Kelley,] or the cohabitation of [Kelley]."

¶3    In September 2016, Eric stopped paying alimony and, on May 25, 2018, brought a petition to modify the divorce decree. In his petition, Eric's sole request was a cessation of his alimony obligation. Eric alleged that Kelley had been cohabiting with another man since early 2016. On that basis, Eric sought termination of his alimony obligation prospectively in full and retroactively to the date on which the cohabiting purportedly commenced.

¶4    On June 3, 2018, Eric effected personal service of his petition on Kelley. The summons expressly stated, "[Y]ou must file your written, signed answer with the clerk of the court" within twenty-one days, and it included a URL link to a blank answer form on the court's website. It also identified a court website for legal assistance and warned that failure to file an

---

1. Because the parties have the same last name, we refer to them by their first names throughout this opinion with no disrespect intended by the apparent informality.

answer in the allotted time could lead to "judgment by default . . . for the relief demanded in the [p]etition."

¶5 After receiving service, Kelley pursued several courses of action. She first sought to retain one of her former attorneys, but the attorney was no longer taking clients. Kelley then went to Legal Aid Society at the Matheson Courthouse. She also met with an attorney at the West Jordan Family Law Clinic and received an answer guide packet. On the Friday before her answer was due, Kelley called the commissioner's chambers but claims she did not receive a response. So, she went to the courthouse and left a note requesting assistance. While at the courthouse, Kelley accessed the law library and made copies of excerpts of the Utah Rules of Civil Procedure. Finally, on the day her answer was due, which was Monday, June 25, 2018,[2] Kelley claims she called the commissioner's chambers again, leaving a voice message. But she did not file her answer on that day.

¶6 On the following Wednesday, June 28, 2018, Eric submitted default documents to the court. The court clerk entered the default, and the district court entered default judgment when it signed findings of fact, conclusions of law, and an order modifying the decree. Later that same day, Kelley filed a motion for an extension to answer, which the court denied. The court noted that the motion was several days late, that Kelley had received personal service of the summons, and that the default certificate had been entered before the request for an extension of time was filed.

¶7 Kelley thereafter retained counsel and, on July 25, 2018, filed a motion to set aside the default judgment for excusable neglect under rule 60(b)(1) of the Utah Rules of Civil Procedure. She included a proposed answer as an exhibit to her motion. In her proposed answer, she denied cohabiting with the other man.

---

2. *See* Utah R. Civ. P. 6(a); *id.* R. 12(a).

The commissioner recommended the motion be denied, concluding that Kelley's neglect was not excusable. Kelley made a rule 108 objection to the commissioner's recommended ruling.[3]

¶8     The objection was fully briefed and came before the district court for hearing. The court reviewed the commissioner's recommendation, ultimately overruled Kelley's objection, and denied the motion to set aside the order modifying the decree. On the record, the court indicated that it was reviewing the commissioner's recommendation under an abuse of discretion standard. In an order memorializing its findings and conclusions, the court indicated that it was "unable to find any error on the [c]ommissioner's part." Further, the court concluded that Kelley had failed to exercise sufficient diligence to justify excusing her delay. It found that Kelley's first attempt to do anything proactive in this case was eight days before the answer was due and explained that her actions "were too little, too late."

¶9     Kelley appeals.

## ISSUES AND STANDARDS OF REVIEW

¶10     Kelley contends that the district court erred in denying her motion for relief from default judgment under rule 60(b)(1) of the Utah Rules of Civil Procedure. In the context of a motion to set aside a default judgment, the movant must show that "(1) the motion is timely;[4] (2) there is a basis for granting relief

---

3. *See id.* R. 108(a) (establishing that "[a] party may file a written objection to the recommendation" of a court commissioner).

4. Timeliness is not an issue here. Rule 60(c) provides a party "90 days after entry of the judgment or order" to file a motion under rule 60(b)(1). *Id.* R. 60(c). The parties correctly agree that the motion to set aside the default judgment was timely because the

(continued…)

under one of the subsections of 60(b); and (3) the movant has alleged a meritorious defense." *E.g.*, *Asset Acceptance LLC v. Stocks*, 2016 UT App 84, ¶ 13, 376 P.3d 322 (cleaned up).

¶11 On appeal, Kelley asserts two main contentions: (I) the district court applied the incorrect legal standards in reviewing the commissioner's recommended ruling and (II) the district court abused its discretion in denying her rule 60(b) motion because her actions constituted excusable neglect.[5] We review whether the district court applied the correct legal standard for

---

(…continued)
judgment was entered on June 28, 2018, and Kelley filed her motion on July 25, 2018—indubitably within the prescribed ninety-day period.

5. The parties also dispute whether Kelley presented a meritorious defense, but we do not reach this issue because we conclude that the district court did not abuse its discretion in determining that Kelley failed to exercise excusable neglect. *See Asset Acceptance LLC v. Stocks*, 2016 UT App 84, ¶ 13, 376 P.3d 322 ("It is unnecessary, and moreover inappropriate, to even consider the issue of a meritorious defense unless the court is satisfied that a sufficient excuse has been shown." (cleaned up)). However, we take occasion to clarify that Eric's arguments misapprehend the law on this issue. He asserts that because Kelley's proposed answer "failed to present any admissible evidence demonstrating a meritorious defense" and was "unverified and unattested," Kelley did not present a meritorious defense. But Utah jurisprudence is abundantly clear that proof beyond allegations stating a claim or defense is unnecessary. *E.g.*, *Sewell v. Xpress Lube*, 2013 UT 61, ¶¶ 33–34, 321 P.3d 1080; *Metropolitan Water Dist. of Salt Lake & Sandy v. Sorf*, 2013 UT 27, ¶ 24, 304 P.3d 824; *Judson v. Wheeler RV Las Vegas, LLC*, 2012 UT 6, ¶¶ 22–25, 270 P.3d 456; *Lund v. Brown*, 2000 UT 75, ¶¶ 28–29, 11 P.3d 277.

correctness. *Rodriguez v. Kroger Co.*, 2018 UT 25, ¶ 11, 422 P.3d 815 (noting that although a district court's decision is reviewed under an abuse of discretion standard, "whether the district court applied the appropriate standard . . . presents a legal question that we review for correctness"). "We review a district court's denial of a rule 60(b) motion for relief from judgment for an abuse of discretion." *Jones v. Layton/Okland*, 2009 UT 39, ¶ 10, 214 P.3d 859.

ANALYSIS

## I. Rule 108 Legal Standard

¶12　Kelley contends that the district court applied the incorrect legal standard in its rule 108 review of the commissioner's conclusions. We agree. In *Day v. Barnes*, 2018 UT App 143, 427 P.3d 1272, we explained that rule 108 of the Utah Rules of Civil Procedure "does not provide for an appeal-like review of a commissioner's decision, but instead requires 'independent findings of fact and conclusions of law based on the evidence.'" *Id.* ¶ 16 (quoting Utah R. Civ. P. 108(f)). We gave several reasons for our conclusion, most notably the plain language of rule 108 and the logic behind the district court's independent review—that is, the commissioner's ruling ultimately becomes the district court's order, and thus "[i]t would make little sense that the district court would be limited in reviewing what is essentially its own order." *Id.* ¶ 18.

¶13　The district court, however, engaged in an abuse of discretion review of the commissioner's recommendation. The court stated that it had "to look at the discretion that the commissioner has and make a determination as to whether or not there was an abuse of that discretion . . . ." We reiterate that not conducting an independent assessment of the facts and legal issues contravenes the plain language of rule 108 and our holding in *Day*. *See id.* ¶ 16 ("[T]he rule is explicit that the district

court's review is independent on both the evidence and the law.").

¶14 However, the invited error doctrine constrains us from reversing on this basis. "Under the doctrine of invited error, an error is invited when counsel encourages the [district] court to make an erroneous ruling." *State v. McNeil*, 2016 UT 3, ¶ 17, 365 P.3d 699. To invite error, a "party must manifest some sort of affirmative representation to the [district] court that the court is proceeding appropriately." *State v. Carrick*, 2020 UT App 18, ¶ 34, 458 P.3d 1167 (cleaned up). "Where a party makes an affirmative representation encouraging the court to proceed without further consideration of an issue, an appellate court" does not consider the party's objection to that action on appeal. *State v. Moa*, 2012 UT 28, ¶ 27, 282 P.3d 985; *see also ConocoPhillips Co. v. Utah Dep't of Transp.*, 2017 UT App 68, ¶ 20, 397 P.3d 772.

¶15 As Eric asserts, Kelley invited the court's error by stating, "It's my perspective and my belief at this point that the court's decision . . . is whether or not the commissioner abused [its] discretion with regard to the excusable neglect component to the motion to set aside." Were it not for such a statement, we would "vacate the district court's order and remand with instruction that the district court make independent findings and conclusions without imposing an erroneous" legal standard. *See Day*, 2018 UT App 143, ¶ 20. But Kelley's affirmative representation served to encourage the court to proceed along an erroneous path, and therefore prevents vacatur on this basis.

## II. Excusable Neglect

¶16 Kelley also contends that the district court abused its discretion in denying her motion based on excusable neglect. We disagree. Under rule 60(b) of the Utah Rules of Civil Procedure, a district court may set aside "a judgment, order, or proceeding" on a timely motion and "just terms" for one of the various enumerated reasons, including "excusable neglect." Utah R. Civ.

P. 60(b)(1). In this context, district courts not only have discretion, they have "*broad* discretion." *Jones v. Layton/Okland*, 2009 UT 39, ¶ 17, 214 P.3d 859 (emphasis added); *see also Fisher v. Bybee*, 2004 UT 92, ¶ 7, 104 P.3d 1198 ("The outcome of rule 60(b) motions are rarely vulnerable to attack. We grant broad discretion to . . . rule 60(b) rulings because most are equitable in nature, saturated with facts, and call upon judges to apply fundamental principles of fairness that do not easily lend themselves to appellate review."). Simply disagreeing with the district court's conclusion is not enough. We must conclude that the decision was so illogical, arbitrary, or unreasonable that it shocks our sense of justice. *Jones*, 2009 UT 39, ¶ 27. After all, "[t]he equitable nature of the excusable neglect determination requires that a district court be free to consider all facts it deems relevant to its decision and weigh them accordingly." *Id.* ¶ 18.

¶17 When exercising this broad discretion, a district court must determine whether a party has exhibited due diligence. "Due diligence is established where the failure to act was the result of the neglect one would expect from a reasonably prudent person under similar circumstances." *Sewell v. Xpress Lube*, 2013 UT 61, ¶ 29, 321 P.3d 1080 (cleaned up). "The ultimate goal of the excusable neglect inquiry" is to determine "whether the moving party has been sufficiently diligent that the consequences of its neglect may be equitably excused." *Jones*, 2009 UT 39, ¶ 20. Sufficient diligence supplies a "reasonable justification or excuse for" a failure to respond. *Sewell*, 2013 UT 61, ¶ 15 (cleaned up).

¶18 Whether a party's efforts are sufficient will always depend on the attendant circumstances. *Jones*, 2009 UT 39, ¶ 22 (explaining that a party's "failure to attend to its legal obligation, may be sufficiently diligent and responsible, in light of the attendant circumstances, to justify excusing it from the full consequences of its neglect"). Sufficient diligence falls on a spectrum between no diligence and perfect diligence. *Id.* ¶ 23. Indeed, while exercising no diligence will never hit the mark of

excusable neglect, exhibiting perfect diligence is not required. *Id.* ¶ 22 ("Perfect diligence is not required."); *Asset Acceptance LLC v. Stocks*, 2016 UT App 84, ¶ 19, 376 P.3d 322 ("Relief may not be granted based on other equitable considerations where a party has exercised no diligence at all." (cleaned up)). Otherwise, rule 60(b)'s excusable neglect provision would be meaningless because in a perfect world with perfect diligence no neglect would ever occur.

¶19    Given the attendant circumstances of this case, the district court acted within its discretion in determining that Kelley's actions fell short of sufficient diligence. It is true that Kelley exercised some diligence. Rather than doing nothing during the time she had to file her answer, Kelley made minimal efforts. She first tried to hire her former attorney. When that was unsuccessful, she sought to become competent to file an answer by herself. She visited both Legal Aid Society at the Matheson Courthouse and the West Jordan Family Law Clinic, receiving an informative packet related to filing answers. She also engaged in independent research of the Utah Rules of Civil Procedure at the courthouse library. And she called the commissioner's chambers several times, leaving voice messages and a note as well. Finally, she filed a motion to extend the deadline to answer only days after the answer was due. These efforts may have supported a decision to grant the motion to set aside the default judgment. But the motion was denied. We cannot say that the district court abused its broad discretion for the following reasons.

¶20    To begin, Kelley received personal service of the petition, so it is indisputable that she had knowledge during the entire period that she had to file an answer or even a motion to extend the deadline for that matter.[6] Moreover, the summons contained

---

6. On this point, Kelley claimed in her motion for an extension to answer that she did not receive notice until she sought advice. But the district court found this claim was not credible,

(continued…)

cautionary language. It stated that "you must file your written, signed answer with the clerk of the court" within twenty-one days. The summons also identified a court website for legal assistance and warned that failure to file an answer in the allotted time could lead to "judgment by default . . . for the relief demanded in the [p]etition." Additionally, Kelley claims that the petition surprised her, but this is dubious. The conditions set forth in the divorce decree gave the parties notice that alimony was modifiable. Thus, a petition to modify was far from unforeseeable. And this particular petition was more foreseeable because Kelley, in her proposed answer, admitted to staying at the other man's house, albeit allegedly with her children who were staying there, which could be seen by Eric as cohabiting—one of the explicit divorce decree conditions for modification.

¶21 Furthermore, Kelley knew very well how to hire an attorney, as she had been represented by four attorneys during the divorce litigation. Thus, she was capable of contacting any number of attorneys from our state's bar to assist her in filing her answer. More to that point, she could have even hired an attorney for the limited purpose of helping her file an answer while she retained more permanent counsel. And the district court found that Kelley's first attempt to do anything proactive in this case—attempting to retain one of her former attorneys—was just eight days before the answer was due. Under different circumstances, involving a person less familiar with attorneys, this aspect of the case may not be as significant. But Kelley's familiarity with hiring an attorney militates against her in this case, especially given the full twenty-two days she had to retain one and her single, delayed attempt to that end.

_____

(…continued)
stating that "it seems unlikely that [Kelley] would pursue information . . . regarding service, were she unaware that the Petition to Modify had been filed." Kelley has not challenged this finding of fact on appeal.

¶22 Another fact works against Kelley in this case: she had a history of tardiness. Three motions for default judgment had been filed against her during the divorce litigation due to alleged dilatory actions. And two of those motions were related to her failure to appear or appoint counsel, as she proceeded pro se. From this experience with previous motions for default judgment, Kelley knew the consequences of not responding on time. And, as noted, the possibility of a default judgment was explicitly stated on the summons she received. Therefore, she was well-aware of what would occur if she did not exercise sufficient diligence.

¶23 Ultimately, Kelley did not attempt to file anything in the prescribed time. All her efforts were essentially research without taking the required action, which of course was actually filing a timely answer—or something else within the specified time. And the district court concluded that, among Kelley's efforts, she must have received information on how to file an answer. The court stated that it did not "find it credible that she did not get information on how to file a simple answer in this matter." Kelley does not challenge this finding. Indeed, she spoke with Legal Aid Society at the courthouse, an attorney at the West Jordan Family Law Clinic, received an answer packet with an explanation of how to answer and defend petitions, and did research of her own into the rules of civil procedure. Therefore, Kelley made a conscious choice not to do what she had been informed of: timely filing an answer.

¶24 In short, Kelley's meager efforts lend support to the conclusion that her neglect was not excusable, and we defer to the district court's broad discretion. *See Jones*, 2009 UT 39, ¶ 17.[7]

---

7. Kelley also contends that the district court erred by not considering the four excusable neglect factors set forth in *West v. Grand County*, 942 P.2d 337, 340–41 (Utah 1997). But *West* itself

(continued…)

## CONCLUSION

¶25    We hold that the district court committed error in its rule 108 review of the commissioner's recommended ruling, but that the error was invited, and therefore not subject to reversal. We also hold that the district court did not exceed its broad discretion in determining that Kelley's actions were not excusable under rule 60(b)(1) of the Utah Rules of Civil Procedure. Accordingly, we affirm.

---

(…continued)

made clear that those factors are neither necessary nor dispositive. *Id.* (explaining that situations of excusable neglect "are so varied and complex that no rule adequately addressing the relevance of all . . . facts can be spelled out" and noting that the four factors "are not dispositive" (cleaned up)). And our supreme court has reaffirmed those points in its subsequent jurisprudence. *See, e.g.*, *Jones v. Layton/Okland*, 2009 UT 39, ¶ 18, 214 P.3d 859 (clarifying that a district court is "free to consider all facts it deems relevant to its decision and weigh them accordingly"). Furthermore, other supreme court opinions have not even mentioned *West* or its four factors in analyzing the issue of excusable neglect. *See generally Sewell*, 2013 UT 61; *Metropolitan*, 2013 UT 27; *Judson*, 2012 UT 6. Therefore, Kelley's argument is unavailing.

Kelley also argues that the district court erred in its factual findings that "this matter was pending since 2013" and that she was not likely surprised by Eric's petition due to her experience with the divorce litigation. She asserts that "the judge got the facts wrong." As a means of explaining background, the court was commenting on the divorce litigation in relation to Eric's petition to modify and its finding that Kelley was not surprised, not erroneously conceiving that Eric's petition was brought in 2013. Thus, Kelley's arguments in this regard are entirely unpersuasive.