2023 UT App 118

# THE UTAH COURT OF APPEALS

THE GOODRICH MUD COMPANY, INC. AND MAX FLUID POWER, LLC,
Appellees,
*v.*
TOPS WELL SERVICES, LLC,
Appellant.

Opinion
No. 20220666-CA
Filed September 28, 2023

Eighth District Court, Vernal Department
The Honorable Gregory Lamb
No. 210800059

Emily Adams and Sara Pfrommer,
Attorneys for Appellant

Matthew M. Boley and Bradley M. Strassberg,
Attorneys for Appellees

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

OLIVER, Judge:

¶1      After TOPS Well Services, LLC (TWS) refused to pay The Goodrich Mud Company, Inc. (Goodrich) and Max Fluid Power, LLC (Max Fluid) for sales taxes and products they provided, Goodrich and Max Fluid filed suit. TWS was properly served through its registered agent, who timely notified TWS of the lawsuit by email. But TWS's employee treated the emails from the registered agent as spam, and TWS did not respond to the complaint. Default judgment was entered against TWS, and the district court denied TWS's motion to set aside the default because it determined that TWS did not act with due diligence. TWS appeals this denial. Because we conclude the district court acted within its discretion in denying TWS's motion, we affirm.

BACKGROUND

¶2      TWS, a North Dakota limited liability company, engages in hydraulic fracturing at various well locations in Utah. From 2017 to 2021, TWS bought sand from Goodrich and rented pumps from Max Fluid to use in its operations.

¶3      Goodrich invoiced TWS for sand products and transportation, initially assessing sales tax against the entire invoice until TWS requested that Goodrich assess sales tax against only the sand charges, claiming the transportation fees were tax-exempt. Goodrich did so, but two years later, a state audit found the transportation costs were not tax-exempt, and Goodrich should have collected additional funds from TWS in sales tax. TWS refused to pay Goodrich the sales taxes on the transportation costs. Max Fluid also issued invoices to TWS for the pumps it rented. Max Fluid agreed to a reduced rental price if TWS made mechanical upgrades to the pumps and only charged TWS for one month out of its two months of use. But TWS also refused to pay Max Fluid.

¶4      On May 26, 2021, Goodrich and Max Fluid (collectively, Plaintiffs) together filed a complaint against TWS in district court. Goodrich alleged breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, statutory liability for sales tax, and negligent misrepresentation. Max Fluid brought claims for breach of contract and unjust enrichment. Plaintiffs alleged TWS owed $550,241.96 to Goodrich and $208,639.43 to Max Fluid.

¶5      On May 27, 2021, the summons and complaint were properly served on "Registered Agents, Inc."—TWS's registered agent in North Dakota. That same day, Registered Agents, Inc. sent an email to TWS's financial analyst (Financial Analyst), notifying her of a "Delivered Service of Process." The email was signed by "Dakota W Registered Agent LLC." Financial Analyst asserted the email was "treated as spam" because it "did not have

an appropriate subject line" and "did not contain any actual attachments." The next day, Registered Agents, Inc. sent another email to Financial Analyst, stating, "The document we uploaded on your company's behalf could be really important and we want to make sure you see it." The email provided a link to view the summons and complaint. Again, the email was signed by "Dakota W Registered Agent LLC." This email was apparently also "treated as spam."

¶6     Less than six months earlier, Financial Analyst had received an email signed by "Dakota W Registered Agent LLC" when TWS initially subscribed to the registered agent service. But Financial Analyst later claimed she did not recognize Dakota W Registered Agent LLC as TWS's registered agent.

¶7     Because Plaintiffs' complaint went unanswered, the district court entered default judgment against TWS in the amount of $320,396.26[1] to Goodrich and $208,639.43 to Max Fluid. Notice of the default judgment was mailed to TWS—this time at its operations location in Vernal, Utah. TWS then retained counsel, who sent an email to Plaintiffs' counsel stating there had been a "communication issue" and it was only after receiving the notice of the default judgment that TWS became aware of the suit.

¶8     TWS then filed a motion to set aside the default judgment under rule 60(b) of the Utah Rules of Civil Procedure, arguing (1) its motion was timely, (2) there were grounds under rule 60(b)(1) to grant such relief, namely inadvertence and excusable neglect,[2] and (3) it had meritorious defenses to Plaintiffs' claims.

---

1. The default judgment originally awarded Goodrich $550,241.96, but due to calculation errors, it was later amended.

2. TWS also argued for relief under rules 60(b)(5) and 60(b)(6). *See* Utah R. Civ. P. 60(b)(5) (providing relief from a judgment which

(continued…)

Plaintiffs opposed the motion, arguing TWS "by its own admission, simply ignored its own emails" and could not show due diligence—a requirement for relief on grounds of mistake or excusable neglect under rule 60(b)(1).

¶9 The district court found that while TWS's motion had been timely and demonstrated meritorious defenses, TWS could not show a basis under rule 60(b)(1) to set aside the default because it could not demonstrate due diligence. The court found that TWS "d[id] not claim the email was quarantined or sent to a spam or junk mail folder" or that "the email went unnoticed or was not sent correctly." Rather, TWS "merely claim[ed] that [Financial Analyst] treated the email as spam and that she is a diligent person." The court disagreed, finding that "[f]ailing to read the email from the registered agent is not excusable" and "[a] reasonably diligent person would ensure they were aware of the email address and the types of emails they would receive from their registered agent." And the court reasoned, "Setting aside the judgment under these circumstances would render the requirements of [r]ule 60(b)(1) virtually meaningless" because "[a]nyone could claim they didn't receive notice because they didn't think it was important." Without a showing of due diligence, the court found TWS could not show grounds for relief and denied its rule 60(b) motion to set aside the default judgment.

## ISSUE AND STANDARD OF REVIEW

¶10 TWS challenges the district court's denial of its rule 60(b) motion to set aside the default judgment. The parties dispute the

---

"has been satisfied, released, or discharged" or where "it is no longer equitable that the judgment should have prospective application"); *id.* R. 60(b)(6) (providing relief from a judgment for "any other reason that justifies" it). On appeal, TWS does not challenge the district court's denial of relief on these grounds, so we do not address them.

standard of review. TWS asserts that this court should evaluate the district court's ruling for correctness because it was based on a "legal ruling." Plaintiffs disagree and assert that our review should be for abuse of discretion. We agree with Plaintiffs.

¶11    It is well-settled that "[w]e review a district court's denial of a rule 60(b) motion under an abuse of discretion standard of review." *Menzies v. Galetka*, 2006 UT 81, ¶ 54, 150 P.3d 480; *see also In re Discipline of Spencer*, 2022 UT 28, ¶ 11, 513 P.3d 759 ("A district court has broad discretion in ruling on a motion to set aside an order or judgment under rule 60(b), and thus, we review a district court's denial of a 60(b) motion under an abuse of discretion standard." (cleaned up)). And when "we peel back the abuse of discretion standard and look to make sure that the court applied the correct law," we ultimately determine "whether the court abused its discretion or regularly pursued its authority in denying the motion." *Utah v. Boyden*, 2019 UT 11, ¶¶ 21–22, 441 P.3d 737. We thus review the district court's denial of TWS's rule 60(b) motion for abuse of discretion, reversing only if the denial "was so illogical, arbitrary, or unreasonable that it shocks our sense of justice." *Somer v. Somer*, 2020 UT App 93, ¶ 16, 467 P.3d 924.

ANALYSIS

¶12    In general, a movant is "entitled to have a default judgment set aside" if "(1) the motion is timely, (2) there is a basis for granting relief under one of the subsections of rule 60(b), and (3) the movant has alleged a meritorious defense." *Young v. Hagel*, 2020 UT App 100, ¶ 11, 469 P.3d 1136 (cleaned up). Rule 60(b) provides several grounds for relief, including "mistake, inadvertence, surprise, or excusable neglect." Utah R. Civ. P. 60(b)(1). To qualify for such relief, a movant must demonstrate due diligence. *Sewell v. Xpress Lube*, 2013 UT 61, ¶ 29, 321 P.3d 1080. "Due diligence is established where the failure to act was the result of the neglect one would expect from a reasonably prudent person under similar circumstances" or where the

movant was "prevented from appearing by circumstances over which they had no control." *Go Invest Wisely LLC v. Murphy*, 2016 UT App 185, ¶ 21, 382 P.3d 631 (cleaned up).

¶13      In making due diligence inquiries, "district courts not only have discretion, they have *broad* discretion." *Somer v. Somer*, 2020 UT App 93, ¶ 16, 467 P.3d 924 (cleaned up). While this discretion is "not unlimited," *Menzies v. Galetka*, 2006 UT 81, ¶ 54, 150 P.3d 480 (cleaned up), a court's due diligence inquiry is "rarely vulnerable to attack" and will be reversed "only where the court has exceeded its discretion." *Fisher v. Bybee*, 2004 UT 92, ¶ 7, 104 P.3d 1198. And "[s]imply disagreeing with the district court's conclusion is not enough. We must conclude that the decision was so illogical, arbitrary, or unreasonable that it shocks our sense of justice." *Somer*, 2020 UT App 93, ¶ 16.

¶14      Here, the district court found that TWS had not demonstrated due diligence where Financial Analyst "treated the email as spam and apparently did not read it" because "[f]ailing to read the email from the registered agent [was] not excusable" or "responsible," and a "reasonably diligent person would ensure they were aware of the email address and the types of email they would receive from their registered agent." A multitude of Utah decisions regarding the failure to check or read correspondence have reached similar conclusions. *See Mini Spas, Inc. v. Industrial Comm'n of Utah*, 733 P.2d 130, 132 (Utah 1987) (determining a delay in filing caused by notice being "inadvertently stuck" to other papers in a drawer was "not due to circumstances beyond the [party's] control"); *Rojas v. Montoya*, 2020 UT App 153, ¶ 26, 477 P.3d 38 (stating parties' knowing failure to correct their addresses on file did "not demonstrate that they used due diligence and that they were prevented from appearing by circumstances over which they had no control" and "on the contrary, they were fully in control of their own mailing information"), *cert. denied*, 481 P.3d 1041 (Utah 2021); *Mathena v. Vanderhorst*, 2020 UT App 104, ¶ 18, 469 P.3d 1144 (neglecting mail

altogether "does not constitute any diligence, let alone sufficient diligence"); *Asset Acceptance LLC v. Stocks*, 2016 UT App 84, ¶¶ 18–19, 376 P.3d 322 (reasoning that choosing not to read litigation documents and thus failing to see notices of requirement to respond, or reading the notices but consciously choosing to disregard such warnings is not excusable neglect); *Aghdasi v. Saberin*, 2015 UT App 73, ¶¶ 6, 8, 347 P.3d 427 (holding an attorney who received emails "even if he did not actually see or read them" and accidentally deleted or lost them due to spam settings on his email account was not diligent and "should have made the same effort to be aware of incoming electronic filings as he would have with paper filings"); *White Cap Constr. Supply, Inc. v. Star Mountain Constr., Inc.*, 2012 UT App 70, ¶ 6, 277 P.3d 649 (noting where defendants' regular practice was to ignore legal mail unless it came through personal service or registered mail, they "exercised no diligence at all" (cleaned up)); *Stevens v. LaVerkin City*, 2008 UT App 129, ¶ 28, 183 P.3d 1059 (deciding that losing documents due to office expansion, relocation, and new staff was not excusable neglect because circumstances "were not beyond counsel's control"); *Black's Title, Inc. v. Utah State Ins. Dep't*, 1999 UT App 330, ¶ 15, 991 P.2d 607 (concluding that attorney who failed to maintain correct address or check mail during an active investigation could not claim excusable neglect because his "lack of knowledge resulted from his own failure to exercise due diligence").

¶15 The district court's findings—which TWS does not challenge on appeal—note the email from the registered agent was not "quarantined or sent to a spam or junk mail folder," nor was it "unnoticed or . . . not sent correctly." Rather, the court found Financial Analyst merely "treated the email as spam and apparently did not read it." The emails from the registered agent, in our view, are quite clearly not spam and a reasonably diligent person would have read these emails and discovered their content. While a party need not be perfectly diligent to obtain relief, "*some* diligence is necessary in order for the neglect to be

considered excusable." *Asset Acceptance LLC*, 2016 UT App 84, ¶ 16 (cleaned up). Because TWS ignored the emails from the registered agent it hired, it failed to act with diligence—let alone the due diligence required to justify relief under rule 60(b)(1).

¶16　TWS nonetheless argues the district court (1) failed to consider several factors relevant to its analysis and (2) took too narrow a view of excusable neglect and mistake. But without a showing of due diligence, these arguments are unavailing. *See Jones v. Layton/Okland*, 2009 UT 39, ¶¶ 23–24, 214 P.3d 859 ("[T]o grant relief on the ground of excusable neglect where a party has exercised no diligence at all, but simply because other equitable considerations might favor it, subverts the purpose of the excusable neglect inquiry . . . . [and] would allow relief based on mere neglect alone."); *Weber v. Mikarose, LLC*, 2015 UT App 130, ¶ 14, 351 P.3d 121 ("Relief may not be granted based on other equitable considerations where a party has exercised no diligence at all." (cleaned up)). And, ultimately, "district courts not only have discretion, they have *broad* discretion" with respect to rule 60(b) motions; showing an abuse of discretion requires more than "simply disagreeing with the district court's conclusion." *Somer*, 2020 UT App 93, ¶ 16 (cleaned up).

¶17　Having found that TWS ignored two important emails from the registered agent it hired, it was not illogical, arbitrary, or unreasonable for the district court to find that TWS failed to demonstrate that it acted with due diligence and deny the rule 60(b) motion.

## CONCLUSION

¶18　The district court did not abuse its discretion in denying TWS's rule 60(b) motion to set aside the default judgment. Accordingly, we affirm.

————