2020 UT App 100

## THE UTAH COURT OF APPEALS

JOSHUA J. YOUNG,
Appellee,
*v.*
MICHAELA M. HAGEL,
Appellant.

Opinion
No. 20190661-CA
Filed June 25, 2020

Second District Court, Farmington Department
The Honorable John R. Morris
No. 156700664

Steve S. Christensen and Clinton R. Brimhall,
Attorneys for Appellant

Mark R. Hales, Attorney for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and
DIANA HAGEN concurred.

HARRIS, Judge:

¶1     After nearly four years of contested litigation in a child custody case, the district court entered a default order against Michaela M. Hagel after her attorney purported to withdraw and she did not file a response to a notice to appear or appoint counsel. After learning of the default order, Hagel asked the district court to set it aside, but the district court denied her motion. Hagel now appeals that denial, and we reverse.

## BACKGROUND

¶2     Hagel and Joshua J. Young have a child (Child) together. In 2011, a Texas court entered an "agreed order" appointing

Young as Child's "sole managing conservator" and limiting Hagel to "reasonable supervised visitation," finding that it would not be in Child's best interest for Hagel to have "specific periods of possession" of Child. The Texas court also ordered that Child have no contact with Hagel's current husband. In 2015, after relocating to Utah, Young registered the Texas order with the Utah district court.

¶3     Soon after the Texas order was registered in Utah, both Young and Hagel—through counsel—filed competing petitions to modify it. Young alleged that Hagel had allowed the Child to have contact with her husband, and therefore asked the court to allow Hagel to exercise parent-time only in Utah and only under professional supervision. In her petition, Hagel asserted that her circumstances had changed, and that she not only should be allowed unsupervised parent-time, but that she should be awarded sole physical custody of Child. After over a year of litigation, the parties reached agreement on modification of the Texas order, and in 2016 the Utah district court entered an order encapsulating that agreement and superseding the Texas order.

¶4     Over a year later, in early 2018, Hagel filed a motion for an order to show cause, asking the court to hold Young in contempt for alleged violations of the operative custody order. Young responded by filing a counter-motion of his own, alleging that Hagel had violated the order, and asking the court to hold her in contempt. The matter came before a court commissioner, who recommended that the parties be ordered to participate in mediation. No party objected to that recommendation, and the district court entered an order commanding the parties to mediate their differences, and stating that if mediation proved unsuccessful, then the parties should "schedule a pre-trial conference to certify the issues for [an] informal trial."

¶5     The parties complied with the court's order, and participated in mediation, but they were not able to reach agreement on the issues raised in the competing cross-motions for contempt. After the unsuccessful mediation, Hagel's attorney

filed a notice announcing his withdrawal, incorrectly certifying that no motions were currently pending,[1] and incorrectly identifying the client from whose representation he was attempting to withdraw. Hagel's counsel did not file a motion asking the court for permission to withdraw, and the court did not sign an order authorizing counsel to withdraw.

¶6 In response to Hagel's attorney's notice of withdrawal, Young's attorney filed a document captioned "Notice of Appearance," but which was apparently intended to serve as a notice to appear or appoint counsel. *See* Utah R. Civ. P. 74(c). Young's attorney mailed a copy of the document to Hagel at her home address. In the document, Young's attorney told Hagel that she "has the responsibility to formally appear personally or to appoint counsel in this matter," and that "the failure to file a formal personal Notice of Appearance will result in striking all your pleadings, an entry of default, and [Young's] pleadings being exclusively used to create any pending orders consistent with Rule 55(b)(1)(A) of the Utah Rules of Civil Procedure." The document did not purport to give Hagel a firm deadline by which any such appearance had to be made, although it did state that "[n]o further proceedings shall be held in the case until 20 days after" the document was filed.[2]

---

1. A few weeks prior to the mediation, Young's attorney did the same thing—he filed a notice of (but not a motion for) withdrawal of counsel, incorrectly certifying that no motions were pending. Before the mediation occurred, however, Young was able to retain new counsel, and was represented by that counsel at the mediation.

2. Rule 74(c) of the Utah Rules of Civil Procedure prescribes a period of twenty-one days, rather than twenty, in which "[n]o further proceedings shall be held in the case" following the filing of a notice to appear or appoint counsel.

¶7 Hagel filed no response to the "Notice of Appearance," either personally or through counsel. About two months later, Young filed a motion asking the court to enter default against Hagel due to her lack of response. However, Young did not serve a copy of his motion on Hagel and, predictably, she did not respond to it. A court clerk later entered a default certificate.

¶8 After obtaining the default certificate, Young then filed a "Motion for Default Orders," in which he asked the district court to hold Hagel in contempt. He also asked the court to order certain modifications to the parties' custody arrangement, including requiring that Hagel exercise parent-time exclusively in Utah, that Young would be allowed to claim Child for tax purposes, and that Hagel pay his attorney fees. Young did not serve a copy of this motion on Hagel, and Hagel did not respond to it. The district court, without holding a hearing, entered Young's requested order (the Order), captioned "Order of Modification." In that order, the court held Hagel in contempt for various reasons, including smoking around Child, "harassing" Young's spouse, and for a child support arrearage; entered judgment against her for $850 related to unpaid child support; and "restrained" her from "calling [the] cops to do welfare checks" on Child and from "calling CPS."[3] The court also ordered that Young "is awarded his attorney fees." In addition, the court ordered that all of Hagel's parent-time "must occur in Utah" and that Young could "claim [Child] for tax purposes." Following entry of the Order, Young mailed Hagel a copy of it, as required by rules 5(a)(2)(D) and 58A(g) of the Utah

---

3. The court actually entered two separate versions of the "Order of Modification," electronically signed fourteen seconds apart. The only discernible difference between the two orders is that the first one contains the $850 judgment and the second one does not. Neither order purports to supersede the other, and neither one was ever set aside, and it is therefore unclear which order governs. Because we vacate the Order, we need not further consider this question.

Rules of Civil Procedure, even though he had not served her with copies of any of the motions leading up to the Order.

¶9     About three weeks later, a new attorney representing Hagel entered an appearance and filed a motion asking the district court to set aside the Order. The motion invoked rule 60(b) of the Utah Rules of Civil Procedure, and asserted that Hagel's actions in failing to respond to the "Notice of Appearance" and the motions for default were due to excusable neglect. Hagel also pointed out, among other things, that her previous attorney's notice of withdrawal was improper under rule 74(a) of the Utah Rules of Civil Procedure, which states that, when motions are pending, "an attorney may not withdraw except upon motion and order of the court." Young opposed the motion, and the court denied it in a written ruling and order.

ISSUE AND STANDARD OF REVIEW

¶10     Hagel now appeals, arguing that the court improperly denied her motion to set aside the Order. Though district courts have "broad discretion" to grant or deny rule 60(b) motions, that discretion is "not unlimited," especially in the context of default judgments. *See Menzies v. Galetka*, 2006 UT 81, ¶ 54, 150 P.3d 480 (quotation simplified); *see also Lund v. Brown*, 2000 UT 75, ¶ 10, 11 P.3d 277 (stating that "the nature of a default judgment and the equitable nature of rule 60 provide further limits" on a court's discretion). When a default judgment is at issue, rule 60(b) motions "should be liberally granted because of the equitable nature of the rule," and courts "should exercise [their] discretion in favor of granting relief so that controversies can be decided on the merits rather than on technicalities." *Menzies*, 2006 UT 81, ¶ 54. A district court abuses its discretion if it denies a rule 60(b) motion to set aside a default judgment in a case where all of the requirements for the granting of that motion are met. *See id.* (stating that "it is an abuse of discretion for a district court to deny a 60(b) motion to set aside a default judgment if there is a reasonable justification for the moving party's failure

and the party requested 60(b) relief in a timely fashion"); *Lund*, 2000 UT 75, ¶ 11 (stating that "it is quite uniformly regarded as an abuse of discretion to refuse to vacate a default judgment where there is reasonable justification or excuse for the defendant's failure to appear, and timely application is made to set it aside" (quotation simplified)); *see also Katz v. Pierce*, 732 P.2d 92, 93 (Utah 1986) (per curiam) ("Where there is doubt about whether a default should be set aside, that doubt should be resolved in favor of doing so."). And, "[i]f a district court's ruling on a 60(b) motion is based on clearly erroneous factual findings or flawed legal conclusions, the district court has likely abused its discretion." *Menzies*, 2006 UT 81, ¶ 55.

## ANALYSIS

¶11     A litigant is "entitled to have a default judgment set aside under rule 60(b)" if three requirements are satisfied: "(1) the motion is timely; (2) there is a basis for granting relief under one of the subsections of [rule] 60(b); and (3) the movant has alleged a meritorious defense."[4] *Menzies*, 2006 UT 81, ¶ 64. It is uncontested that Hagel's rule 60(b) motion was filed in a timely fashion; we therefore focus our discussion on the other two requirements, both of which are contested here.

### A

¶12     To meet the second requirement, Hagel must demonstrate that at least one of the subsections of rule 60(b) provides a basis

---

4. This third requirement need not be met if the movant successfully invokes subsection (4) of rule 60(b), a provision that allows relief if the judgment is void. *See Judson v. Wheeler RV Las Vegas, LLC*, 2012 UT 6, ¶ 15, 270 P.3d 456. On appeal, Hagel does not invoke rule 60(b)(4), and therefore she must satisfy all three requirements.

for setting aside the Order. In an effort to make this showing, Hagel points to subsection (1) of rule 60(b), and asserts that her failure to respond to the "Notice of Appearance" and to Young's default motions was the result of excusable neglect. *See* Utah R. Civ. P. 60(b)(1) (stating that a court "may relieve a party . . . from a judgment [or] order . . . for . . . mistake, inadvertence, surprise, or excusable neglect"). We find Hagel's assertion persuasive, because her failure to respond to the "Notice of Appearance" did not, by itself, automatically place her in default.

¶13    According to our rules, "default" may be entered against a party who "has failed to plead or otherwise defend" the case, *see id.* R. 55(a), and a party who is "in default" is no longer entitled to receive service of motions and other papers filed in the case, *see id.* R. 5(a)(2) (stating that "[n]o service is required on a party who is in default"). Young did not serve Hagel with copies of his motions for default, and asserts that he was not required to do so because Hagel was "in default," for purposes of rule 5, once Hagel failed to respond to the "Notice of Appearance" within twenty-one days. The district court appears to have credited this argument; indeed, an implied premise of its order of dismissal was that Hagel was in default for failing to respond to the notice.

¶14    Young correctly notes that a litigant who is properly served with a complaint and who fails to make a timely response is considered to be in default and no longer entitled to service of documents, even if the clerk has not yet entered a default certificate. *See Abrogast Family Trust v. River Crossings, LLC*, 2010 UT 40, ¶ 23, 238 P.3d 1035 (stating that, "unless a party enters a formal appearance through a pleading in the trial court, it has not appeared and is not entitled to service under rule 5" (quotation simplified)); *see also Cutting v. Allenstown*, 936 F.2d 18, 21 n.1 (1st Cir. 1991) ("Where defendants . . . were served with the summons and d[id] not appear and answer within the required period, they [we]re parties in default for Rule 5(a) purposes," notwithstanding that "the clerk had yet to enter a default" (quotation simplified)). In the context of a litigant who

has failed to respond at all to a duly-served complaint, the outcome of these cases aligns with the text of the operative rules; after all, such a litigant has "failed to plead or otherwise defend" the case, which is the prerequisite for "default" in our rules. *See* Utah R. Civ. P. 55(a).

¶15   But a litigant who fails to timely respond to a notice to appear or appoint has not necessarily "failed to plead or otherwise defend" against allegations raised in a complaint. Such a litigant, by definition, has been involved in the case, with counsel, for some time already before the attorney's withdrawal, and suddenly finds herself without counsel. Courts should not automatically infer, solely from a newly pro se litigant's failure to file any document within twenty-one days of the filing of a notice to appear or appoint, that the litigant has no further interest in litigating the case.

¶16   And no provision in our rules requires any such automatic inference. Rule 74(c) directs opposing counsel to send the newly pro se party a notice "informing the party of the responsibility to appear personally or appoint counsel," and prescribes a twenty-one-day hiatus in the litigation, but rule 74 does not set forth any deadline (as, for instance, rule 12(a) does for responding to a complaint) for the newly pro se party to file any particular document. *See generally* Utah R. Civ. P. 74. And rule 74 likewise does not set forth any particular consequence that will necessarily be visited upon the newly pro se party for failure to file any document within any particular timeframe; no provision of that rule or any other indicates that a party who fails to respond to a rule 74(c) notice is "in default." Thus, we disagree with Young's contention that Hagel was in default here; while she did not file a response to the "Notice of Appearance," she had been actively litigating the case for years and thus had not failed to "plead or otherwise defend" the case. *See id.* R. 55(a). And because she was not in "default" under rule 55(a), we cannot consider her "in default" for the purposes of rule 5(a)(2).

¶17 To be sure, a newly pro se party is not entitled to remain inactive indefinitely, and the opposing party, after expiration of the twenty-one-day hiatus mandated by rule 74(c), may of course seek relief from the court. In appropriate cases, and among other potential sanctions, the opposing party may ask the court to enter default against the newly pro se party. But that party is still entitled to be served with a copy of all documents filed in the case, including any motion seeking sanctions, and should not be considered to be in "default"—under either rule 55(a) or rule 5(a)(2)—merely by virtue of failing to respond to the notice to appear or appoint.[5]

¶18 The Order contains no explicit analysis of why the district court considered Hagel in "default." The court appears to have based that conclusion solely on her failure to respond to the "Notice of Appearance." But this conclusion was unwarranted. Given her active participation in the litigation up to that point, including the recent mediation, Hagel had not failed to plead or otherwise defend the case; to the contrary, she had shown a longstanding desire to advocate for custody of Child. A party should not be considered in default simply for failing to respond to a notice to appear or appoint, and we are aware of no other ground upon which the court might have presumed that Hagel was no longer interested in participating in the litigation.

¶19 Hagel, of course, cannot be faulted for failing to respond to Young's motions for default, because she was not served with

---

5. We find support for this conclusion in the local rules of Utah's federal courts, which provide that "[a]n unrepresented party who fails to appear within twenty-one (21) days after entry of the order [allowing attorney withdrawal], or within the time otherwise required by the court, *may* be subject to sanction . . . , including but not limited to dismissal or default judgment." *See* DUCiv R83-1.4(e)(5), https://www.utd.uscourts.gov/local-civil-rules#eProcedureWithdrawal [https://perma.cc/TN4L-HD37] (emphasis added).

those papers and there is no indication that she was even aware that they had been filed. Because she was not "in default," she was entitled to service of those papers. *See* Utah R. Civ. P. 5(a)(2). And we think it likely that, if served with those motions, Hagel would have responded to them. And we have doubts about whether the district court would have granted those motions for default if Hagel had responded to them. Default was a harsh sanction in this case, especially considering that the case involved custody of Child[6] and that Hagel had vigorously litigated the matter for years.[7]

---

6. Before modifying a custody order to transfer custody of a child from one parent to another, a district court—even in a default setting—must "take evidence and then make findings that a substantial change of circumstances has occurred and that transferring custody of the child is in the child's best interests." *Wright v. Wright*, 941 P.2d 646, 652 (Utah Ct. App. 1997); *see also Chaparro v. Torero*, 2018 UT App 181, ¶ 40, 436 P.3d 339 (stating that a court "cannot avoid making these findings by modifying custody arrangements as a sanction"). In this case, although the court did not transfer custody of Child from one parent to the other, the Order did modify Hagel's parent-time (by requiring that all of it occur in Utah) and "restrained" Hagel from contacting police to "do welfare checks" and from "calling CPS" for any reason, and the court made no finding that any of these new provisions were in Child's best interest.

7. We also note that Standard 16 of Utah's Standards of Professionalism and Civility mandates that "[l]awyers shall not cause the entry of a default without first notifying other counsel whose identity is known, unless their clients' legitimate rights could be adversely affected." Utah Sup. Ct. R. Prof. Practice 14-301(16) (LexisNexis 2019). In *Arbogast Family Trust v. River Crossings, LLC*, 2010 UT 40, 238 P.3d 1035, our supreme court held that an attorney could violate this standard even while complying with rule 5 of the Utah Rules of Civil Procedure, and

(continued…)

¶20 For all of these reasons, the district court erred by presuming that Hagel was in "default," and where a district court grants a rule 60(b) motion on the basis of a "flawed legal conclusion[], the district court has likely abused its discretion." *Menzies v. Galetka*, 2006 UT 81, ¶ 55, 150 P.3d 480. Hagel was under no rule-based deadline to respond to Young's "Notice of Appearance" in any particular time frame, and had done nothing else—other than not respond to that notice—to merit an assumption that she was uninterested in participating in a lawsuit in which she had actively participated for nearly four years. And because Young erroneously considered Hagel to be "in default" pursuant to rule 5, Hagel was never served with copies of Young's motions for default. Under these circumstances, we are hard-pressed to identify any neglect at all on Hagel's part; certainly any such neglect was entirely excusable.[8] Accordingly, Hagel has demonstrated that rule 60(b)(1) provides a basis for setting aside the Order.

---

(…continued)

that an attorney who sent a letter revoking an open-ended extension and demanding an answer to a complaint within twenty days was still required, by the standard, to notify the other side when, at the expiration of the new twenty-day deadline, it sought entry of default from the court. *Id.* ¶¶ 5, 42. In this case, we acknowledge that Young told Hagel, in the "Notice of Appearance," that default "will result" if she did not respond, but we are troubled that Hagel received no other notice that a motion for default was later filed. The actions taken by Young's attorney appear to have been based on a good-faith (albeit incorrect) interpretation of rule 5(a)(2). Nevertheless, we caution attorneys to keep Standard 16 in mind in similar situations.

8. Hagel identifies two other reasons why any neglect on her part should be excused: she asserts that her attorney's withdrawal was improper, and notes that the "Notice of Appearance" was materially inaccurate. We do not rest our

(continued…)

(…continued)

decision upon these arguments, in part because Hagel has not provided any evidence—for instance, through an affidavit—that either condition actually contributed to her failure to respond to the notice. However, both conditions merit additional mention.

Hagel is correct that her attorney's withdrawal was improper. Rule 74(a) of the Utah Rules of Civil Procedure provides that, "[i]f a motion is pending . . . , an attorney may not withdraw except upon motion and order of the court." At the time her attorney filed his notice of withdrawal, the contempt motions were still pending. In that situation, any proper withdrawal could only occur with court approval, which was never obtained. We caution attorneys not to attempt withdrawal, by notice only, when motions are pending.

It is also important for attorneys to take care when drafting notices to appear or appoint counsel. Such notices are, by definition, intended for consumption by newly-attorneyless litigants. We recognize that it is "the substance of [a document] rather than its caption that governs its interpretation," *Fish v. Fish*, 2016 UT App 125, ¶ 7, 379 P.3d 890, and that parties who choose to represent themselves in court "will be held to the same standard of knowledge and practice as any qualified member of the bar," *Lundahl v. Quinn*, 2003 UT 11, ¶ 3, 67 P.3d 1000 (quotation simplified). But when a litigant receives a notice to appear or appoint, that litigant may not yet have chosen to represent herself; she is suddenly and (often) involuntarily unrepresented. It is a moment of potentially great confusion and uncertainty for litigants, and it is a moment at which courts' leniency toward pro se litigants should be near its zenith. *See Noor v. State*, 2019 UT 3, ¶ 57, 435 P.3d 221 (stating that courts should be "lenient to pro se litigants because of their lack of knowledge of law and procedure," and should "grant pro se litigants every consideration that may reasonably be indulged" (quotation simplified)). It is not difficult to envision situations in which a poorly drafted notice to appear or appoint could lead to excusable neglect on the part of the newly pro se party.

B

¶21 To meet the third requirement, Hagel must "allege[] a meritorious defense." *Menzies*, 2006 UT 81, ¶ 64. This requirement exists in order to "prevent the necessity of judicial review of questions which, on the face of the pleadings, are frivolous," *id.* ¶ 108 (quotation simplified), and "ensures that vacating the judgment will not be an empty exercise or a futile gesture," *see Judson v. Wheeler RV Las Vegas, LLC*, 2012 UT 6, ¶ 14, 270 P.3d 456. "This requirement does not set an overly burdensome threshold." *Menzies*, 2006 UT 81, ¶ 108. To meet it, a party need not present evidence supporting the claimed defenses, but merely must articulate a "clear and specific proffer of a defense that, if proven, would preclude total or partial recovery by the claimant." *Judson*, 2012 UT 6, ¶ 23 (quotation simplified). "Even general denials that would allow a litigant to prevail if proven are sufficient." *Menzies*, 2006 UT 81, ¶ 108 (quotation simplified); *see also Somer v. Somer*, 2020 UT App 93, ¶ 11 n.5 (citing cases, and stating that "proof beyond allegations stating a claim or defense is unnecessary").

¶22 Here, Hagel proffers potentially meritorious defenses to several of the Order's provisions. First, she contends that her child support arrearage was only $350, and that the judgment entered against her for $850 is incorrect. Second, she proffered to the district court that many of the other facts alleged by Young in support of his contempt request were inaccurate; for instance, she proffered that she had never smoked around Child or harassed Young's spouse. Third, she proffered that Young's request that all of her parent-time occur in Utah would be unduly burdensome and inappropriate. In the context of a custody and contempt dispute, these denials are sufficient under the *Menzies* standard. While Young argues on appeal that Hagel "provided no details" supporting her defense and "failed to prove facts that would preclude the relief granted" to Young, definitive proof is not required. Under the circumstances, we conclude that Hagel has alleged defenses to much of the Order

that, if proven, would result in significant portions of the Order being improvident. Thus, Hagel has met the third requirement.

CONCLUSION

¶23    Hagel meets all three of the requirements for relief under rule 60(b). Accordingly, the district court abused its discretion by denying her motion to set aside the Order. We therefore reverse the court's denial of Hagel's rule 60(b) motion, vacate the Order, and remand for further proceedings consistent with this opinion.

———————